Wilson
v.
Williams.

# WILSON & PETERKIN *vs.* WILLIAMS & JOHNSON.*

Where goods are bought and a note in the name of a *firm* as endorsers is
given in payment, the *partners* not privy to the transaction are not bound;
the partner using the name of the firm not having authority in such case to
bind his copartners.

The endorsement in such case is not within the course of the partnership
business; the endorsers are mere *sureties,* and the party taking the paper
is chargeable with notice that the endorsement was not made on account
of a partnership transaction.

The case is not varied by the facts that the goods were parted with in the
usual course of trade, and on the credit of the endorsement.

The party holding the paper is not entitled to have a jury pass upon the ques-
tion of *fraud* or no fraud in the transaction; it is not a question of *fraud,*
but of contract, viz: has the partner not concurring in the transaction
agreed to pay the note?

Where it is sought to charge a partner of a firm with the payment of a note
endorsed in the name of the firm by a copartner in a matter not relating
to the partnership business, on the ground of subsequent *assent,* the evi-
dence must be strong and satisfactory; slight and inconclusive circum-
stances will not be sufficient.

A new trial will not be granted where the plaintiff has been *nonsuited,* al-
though there was some evidence to establish the case, if the court on a
motion for a new trial are satisfied, that the evidence, as well that addu-
ced as that offered and rejected, was not sufficient to warrant a verdict in
favor of the plaintiff.

THIS was an action of *assumpsit* tried at the New-York
circuit, before the Hon. OGDEN EDWARDS, one of the circuit
judges.

The action was brought against the defendants as the *en-
dorsers* of three promissory notes amounting together to about

* In consequence of the discussion, in the opinion delivered in the case of
*Gansevoort* v. *Williams & Johnson, ante p.* 133, of the question of the *liabil-
ity of partners,* where the *partnership name is affixed to negotiable paper* by
one of the members of a firm, and other members of the firm seek to avoid
responsibility on the ground of *want of knowledge* of or *assent* to the trans-
action, or that the partnership name was pledged in a matter *not relating to
the business of the firm,* the reporter has been induced to insert out of its
chronological order this case decided in July, 1836, because it fully passes
upon the question discussed in the case above referred to; and for the same
reason, and because alluded to in this case both by counsel and by the court,
he has published, *ante, p.* 141, the case of *Joyce* v. *The same defendants,* de-
cided in May term, 1835.

$1900, bearing date 23d November, 1831, payable in 3, 4, and 5 months. The notes were drawn by *Joseph Denison*, payable to the defendants by the name of *Denison Williams & Co.*, under which name the defendants transacted business as fur merchants. The endorsement of the notes *in the name of the firm*, was in the hand writing of *Williams*, one of the members of the firm. Protest for non-payment and due notice of same were admitted. On showing these facts the plaintiffs rested. The defendant *Johnson*, who alone appeared, called as a witness *Robert M. Penoyer*, who testified that the notes were taken by him in payment for a quantity of hemp sold by him to *Joseph Denison*, the maker of the notes. The hemp was consigned to him in the city of *New-York* by the plaintiffs, who resided in *Baltimore*, to whom he remitted the notes. Denison called to purchase the hemp a day or two before the notes were given. After agreeing upon the price and terms of payment, he told Denison he might have the hemp for a *city endorser*. Denison said he would give *Denison Williams & Co.* On inquiry he was satisfied with their credit, and told Denison he might have the hemp. Notes were then prepared by a clerk of the witness, Denison signed them, and the clerk took them to *Denison Williams & Co.*, and brought them back with their name endorsed upon them, when, and not before, the hemp was delivered to Denison. Upon this evidence the judge ruled that the plaintiffs were bound to shew the *assent* of *Johnson* to the endorsement of the notes *in the name of the firm* by *Williams*. The plaintiffs excepted to the decision, and then went into evidence for the purpose of showing facts and circumstances to warrant the presumption, that *Johnson* had *assented* to the endorsement of the notes. Some of the evidence offered by the plaintiffs with that view was rejected by the judge, to which the plaintiffs also excepted ; but inasmuch as this court, in disposing of the motion for a new trial, held that the evidence adduced and offered to be given was not sufficient to warrant a verdict in favor of the plaintiffs, it is deemed immaterial to state it. The judge, on the proofs being closed, *nonsuited* the plaintiffs. A motion was now made that the nonsuit be set aside, and that a new trial be granted.

*I. L. Wendell,* for the plaintiffs, insisted that a vendor of goods, who in the usual course of trade, for a valuable consideration takes the promissory note of the purchaser, endorsed by a *mercantile firm,* may enforce payment of the note *against all the members of the firm,* unless *express notice* is brought home to him that the endorsement by the member of the firm who affixed the partnership name was an *unauthorized act* done *in fraud* of the copartners ; or it be shewn that the endorsement was made under circumstances from which *notice may be implied.* He insisted that when the name of a *firm* appears on negotiable paper, the law *presumes it to be given for a partnership debt,* or in a matter relating to the business of the firm, *Vallett and others* v. *Parker,* 6 *Wend.* 615 ; and consequently all persons into whose hands it comes have a right so to consider it. The presumption however, like all other presumptions, he admitted might be rebutted by proof that the paper was not given for a partnership debt, or in a matter relating to the business of the firm ; but in such case *knowledge of that fact* must be brought home to the holder of the paper. Proof that the endorsement of the name of a firm is *in the hand writing of one of the partners,* does not destroy the presumption, because in all cases the endorsement must *necessarily* be in the hand writing of one of the partners, and if such proof were sufficient to rebut the legal presumption of the endorsement being the act of the firm, the consequence would be that *in every case* the holder would be obliged to show the *assent* of all, or that the credit of the firm was pledged in a matter relating to the business of the firm. To discharge the other partners there must be proof that the creation of the obligation was the *individual act* of the partner affixing the partnership name in a matter unconnected with the business of the firm ; and that the party accepting the paper had *express notice* of the facts, or circumstances must be shown from which notice may be *implied ;* the whole resolving itself into a question of *bona fides.* If there is no fraud in the party receiving the paper, all the members of the firm are bound. *Hope* v. *Cust, cited in* 1 *East,* 53. *Shirriff and another* v. *Wilkes, id.* 48. *Swan and others* v. *Steele and others,* 7 *id.* 210. *Galway* v. *Matthew & Smithson,* 10 *id.* 264. *Ridley and another* v. *Taylor,* 13 *id.* 175. *Arden* v.

*Sharpe & Gilson,* 2 *Esp. N. P. R.* 524. *Wells* v. *Marterman and others, id.* 731. *Baker and others* v. *Charlton, Peake's N. P. C.* 80. *Green* v. *Deakin and others,* 2 *Starkie's R.* 307.

The law on this subject is the same here as in England. Thus Chief Justice SPENCER, in the case of *Foot* v. *Sabin,* 19 *Johns. R.* 153, where one of two partners had signed the partnership name to a note as *sureties* for a third person, says, " the creditor is *aware* that he is pledging the partnership responsibility in a matter in no wise connected with the partnership business, *and that is a fraud on such of the partners as do not assent expressly that the firm shall be bound.*" So Mr. Justice MARCY, in *Dean* v. *Hewitt,* 5 *Wend.* 261, says, " The court will not inquire into the right of the holder of negotiable paper to maintain a suit upon it, unless circumstances appear showing his possession to be *mala fide.* See also *Brown* v. *Taber,* 5 *Wend.* 566, where it is conceded that the holder is entitled to recover unless he knows that the note was put into circulation *fraudulently,* or there are circumstances charging him with notice. Mr. Justice NELSON also, in the case of *Gansevoort* v. *Williams & Johnson, ante, p.* 138, says, " *Prima facie* the execution of the bill or note in the name of the firm by one partner binds the whole. The burthen, therefore, of proving a presumptive want of authority, and of course *fraud,* (for that necessarily follows,) lies upon the co-partner. We hold that the fact of the paper of the firm being given out of the course of the partnership business by one member, is presumptive evidence of want of authority to bind the other members of the firm ; and if the person taking it knows the fact at the time, he is chargeable with notice of want of authority, and *guilty of concurring in an attempted fraud* upon the other partners." There formerly was a difference in the law as held here and in England as to the *onus probandi,* where the note of a firm was pledged by a member thereof *for his individual debt.* Here the separate creditor, who had obtained the partnership paper *for the private debt of one of the partners,* was always required to show the assent of the whole firm in order to bind them ; whilst in England it was held that the burthen of avoiding the security rested on the firm, and they were required to prove that the act was *covinous* on the part of the partner for whose

private debt the paper of the firm was given, by showing that it was done without the knowledge, and against the consent of the other partners, and that the fact was known to the separate creditor when he took the paper of the firm. 13 *East*, 175. 16 *Johns. R.* 38. This difference no longer exists, the courts in England having of late years adopted the rule as it always prevailed here. But although the difference above alluded to did exist as to the law on this subject, it was never here held to be law, that the holder of mercantile paper was bound to prove the *assent* of all the members of the firm, until after it was proved that the credit of the firm had been *covinously* pledged by one of the members of the firm, and that with the knowledge, either express or implied, of the party taking the paper.

Mere *want of authority* in the partner who pledges the partnership name in a matter not relating to the business of the firm, unaccompanied by notice to the party taking the paper, will not discharge the other members. This must be so, or the want of authority would exonerate the other partners from the payment of the note, although it should have passed into the hands of an innocent endorsee—which cannot be pretended, because *without notice* he is a *bona fide* holder and entitled to recover; and if the first taker of the note has not notice of facts or circumstances rendering him a party to the fraud, he stands upon the same footing as an endorsee without notice. Where a note is *passed without authority*, or *fraudulently put into circulation*, or even *stolen*, the *bona fide* holder, who has obtained it in the ordinary course of trade for a valuable consideration, may enforce payment. *Miller* v. *Race*, 1 *Burr*. 452. *Grant* v. *Vaughan*, 3 *id*. 1526. *Peacock* v. *Rhodes, Doug*. 633. *Woodhull* v. *Holmes*, 10 *Johns. R.* 231. *Coddington* v. *Bay*, 20 *id*. 637. *Rosa* v. *Brotherson*, 10 *Wendell*, 85. *Brown* v. *Taber*, 5 *id*. 566. *Smith* v. *Lusher*, 5 *Cowen*, 688, *and* —— v. *Layfield*, 1 *Salk*. 292, *note by Mr. Evans*. And whether the party taking the paper is chargeable with notice, and thus subject to the imputation of fraud or covin, *must be submitted to a jury*. Such is the law in England, as appears by all the above cases, and so it was held in this court in the case of *Livingston* v. *Roosevelts*, 4 *Johns. R.* 251, where a verdict was set

aside, and the court directed the question of *notice* to be submitted to a jury. Testing this case by these principles, the plaintiffs are entitled to recover. The notes were taken in the usual course of trade, for a valuable consideration passing at the time, the plaintiffs parting with their property expressly on the credit of the endorsers. They had no knowledge, nor are there any circumstances from which knowledge may be inferred, that the endorsements were made out of the course of the proper business of the firm ; it was not the duty of the plaintiffs to inquire into the state of the accounts between the defendants and *Denison* the purchaser of the hemp, to ascertain whether the endorsements were connected with the proper business of the firm. Seeing the name of the firm upon the notes, the plaintiffs were authorized to presume, as the law presumes, that the endorsements were the acts of the firm, and connected with the proper business of the firm. They had no notice, nor are there any circumstances from which notice may be inferred, that the endorsements were the *individual acts of one partner, as contra distinguished from the acts of the firm ;* that is, that the plaintiffs knew that one partner was pledging the partnership name in a matter to which the other partner would not have consented had he known of the transaction. Nor does it appear that the plaintiffs even knew which of the defendants affixed the partnership name. But if it be conceded that the agent of the plaintiffs knew that the endorsements were made by *Williams* and not by *Johnson*, there is no fact or circumstance from which it can be inferred that the plaintiffs, their consignee, or the clerk who took the notes for endorsement to the counting-house of the defendants, knew that *Williams*, in making the endorsements, was acting in his individual capacity, pledging the credit of the firm, without the knowledge, against the consent, or in fraud of his copartner *Johnson*.

It was further insisted in support of the motion for a new trial, that the positions contended for on behalf of the plaintiffs were not only fully supported by the English cases, but were in conformity to the received law and usage of merchants in this country, and not in conflict with the decisions of this court. Thus it was urged that though the plaintiff failed to recover in the case of *Livingston* v. *Hastie*, 2 *Caines*, 246, he so failed

UTICA,
July, 1835.

Wilson
v.
Williams.

because *the partnership note was taken for the individual debt of one of the partners.* The same doctrine prevailed in the cases of *Lansing* v. *Gaine & Ten Eyck*, 2 *Johns. R.* 300, *Livingston* v. *Roosevelts*, 4 *id.* 251, and *Dob & Dob* v. *Halsey*, 16 *id.* 34. So the plaintiff failed to recover in the case of *Foot* v. *Sabin*, 19 *Johns. R.* 153, because the creditor had accepted the partnership responsibility pledged by an individual member of a firm, in a matter not relating to the business of the firm, viz. as *security for the debt of a third person*, and that *known to the creditor at the time of receiving the security.* The same doctrine was held in the cases of *Laverty & Gantley* v. *Burr & Baldwin*, 1 *Wend.* 529 ; *Williams* v. *Walbridge*, 3 *id.* 415, and *Boyd and others* v. *Plumb and others*, 7 *id.* 309. In the last cited case the true rule on this subject is laid down by Mr. Justice NELSON, viz. that " the *obligation of all the members* of the firm depends upon the fact of the *want of knowledge on the part of the person receiving the security, that it was given in a matter unconnected with the partnership business.*" The rule of law prevailing in the latter class of cases above referred to, does not control the case now before the court ; the endorsements of the defendants were *not given as security for the debt of Denison.* The obligation assumed by the endorsements was an original obligation, on the faith and credit of which alone the plaintiffs parted with their goods. It was an ordinary mercantile transaction, where the plaintiffs sold their goods provided the purchaser could give them a good city endorser, or in other words, approved paper. Surely this was not pledging the credit of the partnership as *security for the debt of a third person*, as in the cases above referred to ; for in those cases, the credit of the firm was pledged for *pre-existing debts.* It cannot be denied that it is competent to a mercantile firm to endorse the paper of others, and that their endorsements, when made, must necessarily be in the handwriting of one of the members of the firm ; nor can it be denied that when the signature of a firm is found to a note, the presumption of law is, that it was given for a partnership debt, or in a matter relating to the business of the firm. *Vallett and others* v. *Parker*, 6 *Wendell,* 615. If this be so, then the plaintiffs in this case are *bona fide* holders of the notes ; they received them in the usual course of trade,

for a valuable consideration, parting with their property expressly on the credit of the endorsements. They did not know that the party affixing the partnership name had no right to pledge the credit of the firm in that particular transaction, or that he endorsed the notes for the accommodation of Denison, *without the concurrence of his partner*, or that the endorsements were made in a matter unconnected with the business of the firm, or that he was committing a fraud upon his partner. Nor were there any circumstances putting the plaintiffs upon inquiry, or requiring caution in the taking the endorsements. It was an ordinary mercantile transaction, fair, open and above suspicion. If the plaintiffs in this case cannot recover, the value of the paper of a mercantile firm for all commercial purposes is effectually destroyed ; for the principle will be established that the negotiable paper of a mercantile firm cannot be enforced against the firm, without showing affirmatively that the partnership name was affixed by one member with the concurrence of the copartners, or that the credit of the firm was pledged in the proper business of the firm ; which it is boldly affirmed never as yet was required, until the presumption of law that the partnership name affixed to negotiable paper is the act of all the partners was first rebutted by proof that the credit of the firm was *covinously* pledged by an individual member, and that known to the party taking the paper.

The counsel for the plaintiffs conceded that there are two cases in this court which seem to hold a doctrine different from that for which he contended, viz. *The Bank of Rochester* v. *Bowen and others,* 7 *Wendell,* 158, and *Joyce* v. *Williams, ante, p. 141.* In the first of these cases, one of two partners affixed the partnership name, as drawers to a note of one *Bowen,* to enable him to obtain a *loan of money* from the plaintiffs ; and it was held that the other partner was not liable. It is manifest from the charge to the jury, that all the facts which transpired on the trial of that cause cannot have been incorporated in the case presented to this court, and that there must have been proof going to show that the partnership name had been pledged by one partner, without the knowledge or consent of the other, *and that known to the bank.* [Mr.

Justice Nelson interrupting the counsel, remarked, "undoubt-edly there must have been such evidence."] The counsel continued, that no doubt such evidence must have been given, because the circuit judge charged the jury, that if they should be of opinion that the partnership name of *Aldrich & Searle* was subscribed by *Aldrich*, without the knowledge or consent of *Searle*, as surety for *Bowen*, they must find for the defendants, when without such evidence the judge would not have submitted the question of *assent* to the jury; for upon the mere fact that the partnership name was affixed by one partner, the jury could not have passed upon the question of the assent of the other. If this were so, and there was evidence of the want of knowledge or assent, either express or implied, this case forms no exception to the general rule governing cases of this kind; but if otherwise, it is at war with the whole current of decisions as well in this country as in England.

The other case, that of *Joyce* v. *The same defendants*, was an action upon an *acceptance* given by the defendants, upon a draft of one *Flagg*, for goods purchased of the plaintiff. The goods were parted with on the faith of the acceptance. In that case as in this, the partnership name was affixed by *Williams*, and it was proved that the plaintiff had not any knowledge or reason to suspect that there was any thing wrong about the acceptance, or that it had been improperly given. Notwithstanding which, the learned judge who delivered the opinion of the court in that case viewed the acceptance as a *mere security for the debt of a third person*, instead of an *original obligation*, on the strength of which alone the plaintiff parted with his goods. The cases cited by the learned judge, to support the position that this was a mere pledging of the partnership credit *as security for the debt of a third person*, do not uphold him, as in those cases the partnership credit was pledged either for the *individual debt of the partner*, or for *pre-existing debts*, and that known to the party taking the paper. Besides, throughout the whole opinion the learned judge *assumed* that the plaintiff *knew* that the acceptance was the individual act of one partner without the concurrence of his copartner, in a matter unconnected with the business of the firm, and that known to the plaintiff, although there was not an iota of evi-

dence that the endorsements were made without the concurrence or knowledge of *Johnson*, or against his consent, or that the endorsements were unconnected with the business of the firm—it not being even shown that Joyce *knew* which of the partners affixed the partnership name; but on the contrary it was expressly proved that he had no knowledge or reason to believe there was any thing wrong, or in other words, *covinous*, in respect to the acceptance. These cases therefore, it is trusted, will not induce the court to deny the motion of the plaintiffs, if otherwise they shall be satisfied that a new trial ought to be granted.

The counsel for the plaintiffs also insisted that the evidence adduced, and that offered to be given and rejected, was sufficient to have warranted the jury in implying the *assent* of *Johnson* to the giving of the endorsements, and that therefore, instead of nonsuiting the plaintiffs, the judge ought to have submitted the question to the jury.

*J. Slosson & S. P. Staples*, for the defendants. A party who takes from one of the members of a partnership the note or endorsement of a firm, for the private debt of one of the partners, or as security for the debt of a third person, or for any matter not relating to the business of the firm, cannot compel payment from the other partners. Here the endorsement of the firm of Denison Williams & Co. was taken as security for the debt of a third person. The plaintiffs knew it was given for the debt of Joseph Dension. *Prima facie* the production of the paper in the name of the firm entitled the plaintiffs to maintain the action, but the facts on the part of the defendants are sufficient to charge the plaintiffs with notice that the partnership name was pledged in a matter not relating to the business of the firm. The facts are substantially the same as in the case of *Joyce* v. *Williams & Johnson*, where they were held sufficient to charge the plaintiff with notice, and the court decided that he was not entitled to recover. One partner has no authority to bind another in a matter not relating to the business of the firm. Where the partnership name is pledged by one of the members of the firm, in a matter out of the range of the business of the firm, *express assent* must be shewn to bind

the other partners—*implied assent* is not enough ; and as was said in *Mercein* v. *Andrus & Mack*, 10 *Wendell*, 461, a partner cannot be bound by implication in a transaction not relating to the partnership concern ; it must be by his express agreement.   The case of *Mercein* v. *Andrus & Mack*, goes on all fours with the case now before the court, and upon the strength of it the plaintiffs were nonsuited at the circuit.   In reference to the refusal of the judge to receive the evidence offered to prove the assent of Johnson, and nonsuiting the plaintiff instead of submitting the question of assent to the jury, the evidence was not of sufficient weight to have warranted a verdict, and in such case though the judge may have erred in not submitting the cause to the jury, the court will not set aside the nonsuit.   *Demyer* v. *Souzer*, 6 *Wendell*, 436.

*Wendell*, in reply, said he was obliged to the counsel on the other side for unravelling the mystery of the nonsuit.   It seems now that the plaintiffs were nonsuited on the strength of the decision in *Mercein* v. *Andrus & Mack*, a case depending upon principles wholly inapplicable to the law merchant.   That was an action upon a *parol promise* of one of the members of a firm to pay and satisfy a judgment, and the firm were sought to be charged for the non-performance of such promise.   It was under such circumstances that the chief justice used the language quoted on the other side ; but he preceded the observation by saying, that " had the transaction related to a *partnership concern*, both would have been bound."

*By the Court,* BRONSON, J.   It was enough for the plaintiffs to prove, in the first instance, that the defendants were partners, and that the endorsement of the notes was in the hand-writing of *Williams*, one of the firm.   But when it appeared that the notes were not endorsed in the course of the partnership business, but for the benefit of *Denison*, and that this fact was known to the plaintiffs, it was then incumbent on them to show that *Johnson* as well as *Williams* had assented to this undertaking.   *Penoyer*, the plaintiffs' agent who made the sale, knew that the endorsements were not made on account of any partnership transaction of *Williams & Co.*, but for the

debt or benefit of *Denison ;* that the endorsers were not principals, but mere *sureties* for *Denison* who purchased the hemp. The clerk of *Penoyer,* who carried the notes and procured the endorsements, must have known that it was the act of *Williams* alone. But it was unnecessary to bring home notice the plaintiffs that *Johnson* was not bound. It was their business to show affirmatively that he was a party to the contract. The notice which defeats the plaintiffs, is, notice that the endorsements were not made on account of a partnership transaction, but as sureties for *Denison.* It would be useless to go into a review of the cases. There has been a uniform course of decisions on the question in this state for more than thirty years; and nothing could be more mischievous than to unsettle a well established rule in relation to mercantile and commercial transactions. 2 *Caines,* 246. 2 *Johns. R.* 300. 4 *id.* 251. 16 *id.* 34. 19 *id.* 154. 1 *Wendell,* 529. 3 *id.* 415. 6 *id.* 615. 7 *id.* 158, 309. 11 *id.* 75.

The plaintiffs insist that they parted with their goods in the usual course of trade and on the credit of these endorsements; but that fact will not help them. *Bank of Roches-ter* v. *Bowen and others,* 7 *Wendell,* 158. There the plaintiffs had parted with their money on the credit of a partnership name subscribed by one of the partners; but it appeared that the note was discounted by the bank for the benefit of a third person; and this fact being known to the cashier at the time, it was held that the plaintiffs could not recover without proving the assent of all the partners to the undertaking. It is impossible also to distinguish the case now under consideration from that of *Joyce* against *the same defendants.* *Joyce* sold goods to one *Flagg,* and in payment took his draft on the defendants, accepted by the firm in the hand-writing of *Williams.* The case expressly stated that the goods were parted with on the faith of the acceptance ; but it was held that *Johnson* was not liable, and a verdict which had been rendered for the plaintiff was set aside. *Joyce,* or what was the same thing, his *clerk,* knew that the draft was accepted by the firm as sureties for *Flagg ;* and it then became necessary for him to prove that both of the partners had agreed to the undertaking.

It is said that it should have been submitted to the jury to say whether there was any fraud in the transaction. It is not a question of *fraud*, but of *contract*. Has *Johnson* ever agreed to pay these notes? *Williams* had no authority to bind him; and if *Johnson* has not himself assented to the obligation, there is an end of the question. Good faith on the part of the plaintiffs cannot subject a third person, who has never dealt with them, to any liability; and if they parted with their goods in the honest belief that *Johnson* as well as *Williams* was answerable as an endorser of the notes, that only proves that they mistook the law of the land. Their error in judgment was a misfortune, which they cannot throw off upon one who stands on his legal rights.

I think the evidence given by the plaintiffs, and that which was offered and rejected, was not sufficient to warrant the presumption that *Johnson* had assented to this undertaking. It is not pretended that there was any direct evidence to charge him; and the facts and circumstances on which the plaintiffs rely, are too remote and unsatisfactory in their character to authorize the inference of an agreement on his part. Full effect must be given to the rule, that in transactions of this kind one partner cannot bind the other without his consent. It would be better that the rule should be abolished, than to allow its practical nullification by presuming assent upon the proof of slight and inconclusive circumstances. Although the plaintiffs gave some evidence tending to make out a case against *Johnson*, it was not sufficient to warrant a verdict in their favor, and a nonsuit was properly ordered. *Demyer* v. *Souzer*, 6 *Wendell*, 436.

New trial denied.