TuRLey, J.
delivered the opinion of the court.
The question presented for consideration in this case, is one of much interest to the commercial community, and has received that careful consideration, which its importance well merits.
The liability of partners upon contracts made in the name of the firm, has occupied much of the time and attention of courts of justice, in all commercial countries, and the principles upon which it rests, though varying a little and but little, seem to be well settled by authority, and upon correct principles of equity and justice; the rights of third persons on the one hand being well secured against all the members of the partnership upon contracts legally made, whilst on the other, the rights of an individual partner are properly protected against the illegal and fraudulent conduct of those with whom he is associated in trade.
The case under consideration presents the following facts:
Daniel Saffarrans and Robert M. Boyers were partners in trade and merchandise, in the town of Gallatin, from 1835 to 1838, when they sold out their goods without in form dissolving their partnership; they were also partners in buying and selling land to very large extent, which was in continuance up to the time of the trial in the court below. Their operations were heavy and inquired extensive means, both in money and credit, requiring them to draw and endorse bills of exchange and promissory notes, and give endorsers for large amounts, *605 which they did. Boyers was the managing partner in Tennessee, (Saffarrans being most of his.time absent from the State,) and as such drew and endorsed in the partnership name all of the bills and notes required for the use of the firm; part of which Saffarrans paid. There is no proof that by the terms of the partnership any authority was given to either member of the firm to draw or endorse any bill or note other than such as the law regulating the rights and liabilities of partners permitted. On the 4th day of October, 1839, Benjamin Exum drew a bill on New Orleans for three thousand dollars at six months; this bill was endorsed by Boyers in the name of the firm of Saffar-rans & Boyers, and discounted by the Bank of Tennessee; it was drawn and discounted for the benefit of the drawer, and the proceeds received by him, all of whicRgag'^pwn to the officers of the bank at the time it bill not being paid at maturity, a note^vg^j&fawn by Esm in favor of Simpson Merrell, for the sum of three (tte©Sj$i&%wo hundred and thirty dollars, was endorMdrary Boyers in |e name of the firm, discounted by the banMand^^g^S^S^pliedto the payment of the bill. There is\p^¡)roof shcgs>if]g that Saf-farrans was éver aware that his name nacfffsBífthus used by his partner, or that he had ever given his assent or approbation thereto, either expressly or impliedly; and the question now is, is he responsible as endorser of the note?
In Gow’s Treatise upon Partnership, page 53? the general law upon the liability of partners, upon contracts made in the name of the firm is thus laid down: “Partners are bound universally by what is done by each other in the course of the partnership business; their liability is commensurate and coextensive with their rights.”
In the case of Harrison vs. Jackson, 7 Term. Rep. 207, it is held, that in simple contracts itis a clear and undeniable principle of law, that one partner may by his own acts bind his co-partners in transactions relating to the partnership. So the signature of one partner as the maker of a promissory note, or the drawer of a bill of exchange, or his acceptance or endorsement of a bill or note, is binding upon his co-partner in transactions relating to the partnership. :
*606 But cases exist (and this is one of them) in which a partner may enter into a joint engagement in a transaction not relating to the partnership, and it will only be binding if it receive their express or implied sanction. “The power possessed by a partner of binding his co-partners in joint transactions without their knowledge or consent, bears in many instances, sufficiently hard upon partners, but it would.fee'carrying their liability for each other’s acts to amost unjust extent if it were suffered, that in a separate transaction, one partner could pledge the credit of the firm.
This subject has frequently fallen under judicial consideration in the courts, both in England and the United States, and it has been undisputably settled, against the power. In the case of Swan vs. Steel. 7 East, 210, it was held that if a creditor of one of the partners collude with him to take payment or security for his individual debt out of the partnership funds, knowing at the time that it was without the consent of the other partner, it is fraudulent and void. In the case of Wells vs. Masterman, 2 Esp. N. P. C. 131, it is held that if a man who has dealings with one partner only, draws a bill of exchange upon the partnership on account of these dealings, he is guilty of a frau d, and the acceptance made by the partner on the account of the firm would be void; so when the bill was drawn by one partner in the joint name, to the order of his separate creditor, it was held that he could not recover against the firm, notwithstanding he had no notice of the non-concurrence of the co-partner. Green vs. Deakin, 2 Stark. N. P. C. 347. But in the case of Henderson vs. Wild, 2 Campbell, 261, the converse of this proposition is held, upon the ground, that the proof of non-concurrence rests upon the partner seeking to be discharged, and that in the absence of all proof upon the subject, a concurrence will be presumed; a principle which seems to be established by the current of authority in England, yet not without some conflict.
In the case of Arden vs. Sharp, 2 Espmassis N. P. C. 523, it is held that in case of a bill endorsed by one partner in the name of the firm, when the party bringing the action is himself the person who discounted the bill, and wa's informed at the time that the transaction was to be concealed from the other part- *607 hers, he cannot hold the partnership responsible,- the transaction itself indicating that the money was .for the separate partner’s own use, and was not intended to be applied for partnership purposes. So in the case exparte Bonbonus, 8 Yesey, 640, it is determined that if a partnership negotiable security be given by one partner to his creditor in discharge of an antecedent debt due from himself, the presumption-is, that the firm is not liable, because the separate creditor must be considered as being advertised, in the nature of the transaction, that it could not be intended to be a partnership proceeding. In the case of expar-te Agace, reported in 2 Cox, 312, and referred to in Collier on Partnership, p. 270, Lord Commissioner Eyre, says: “In partnerships both parties are authorized to treat for each other in every thing that concerns or properly belongs to the joint trade, and will bind each other in transactions with every one who is not distinctly informed of any particular circumstances which may vary the case. On the other hand, if the transaction has no apparent relation to the partnership, then the presumption - is the other way, and the partnership will not be bound by the acts of one of the partners without special circumstances; here the debt due had nothing to do with the partnership, I am perfectly satisfied that this was a transaction with an individual partner, in a matter not relating to the partnership, and that, therefore, the partnership could not be bound by it without subsequent concurrence.” Lord Ashurst said, one partner is bound by the acts of his co-partner in all acts referable to the partnership trade; but when a man takes a security from one partner in the name of the firm, in- a transaction not in the usual course of dealing, he takes such security at his own peril.
In the case of Franklin vs. McGurty, 1st Knapp’s Rep. 315, Sir John Leach, Master of the Rolls, says: “I take it to be clear, from all the cases upon the subject, that it lies upon a separate creditor who takes a partnership security for the payment of his' separate debt, if it be taken simpliciter, and there is nothing, more in the case, to prove that it was given with the consent of the -other partners. But there may be other circumstances attending the transaction whieh'may afford the separate creditor a reasonable ground of belief, that the security so *608 given in the partnership name, is given with the consent of the other partners. Upon a consideration of all the authorities, I am of opinion, that the law is, that taken simpliciter the separate creditor must show the knowledge of the partnership, but if there are circumstances to show a reasonable belief, that it was given with the consent of the partnership, it lies upon the partnership to ¡Drove the fraud, which I think will reconcile the cases.”
And again, in the same case: “There being no direct evidence whether the bills had been given with the assent of the partners, the question was, whether they being given by an individual partner in the name of the partnership firm for his individual debt, the burden of proof to show that the other partners did not assent to their formation, rested upon the partners or upon the party claiming the interest in the bills, and upon the consideration of that question and examining all the authorities he was of opinion, that simpliciter bills drawn by one partner for a separate debt in the partnership name, could not be recovered upon as against the partnership firm: but that the person claiming payment of the bills, must prove either a direct assent of the other partners to the formation of the bills, or if not such direct assent, that there were some circumstances in the transaction from which the party taking them might reasonably infer, that they were given with the assent of the partners.”
Then the law upon this subject, in England, seems to be conclusively settled, that one partner cannot bind the partnership, by drawing, endorsing or accepting notes or bills upon a transaction not relating to the partnership; that if it be done, the other partners are not responsible, if they can show that it was done without their knowledge or consent, and that they had not after-wards assented thereto; and most probably, that if the notes or bills be taken simpliciter, that is, without any attending circumstances, sufficient to raise a reasonable presumption, that they were executed with the assent of the other partners, the person receiving them, is bound by the knowledge of the consideration, and that it throws upon him the necessity of proving the assent precedent or subsequent: and these principles apply to all per *609 sons into whose hands soever the securities may come with knowledge of the consideration, or in other words, who are not bona fide purchasers, without notice.
But whatever of difficulty or doubt, if any, may exist in England as to the person upon whom the onus yrobandi lies, there is none in this country.
Mr. Story in his Treatise on Partnership, p. 190, sec. 127, says: “If one partner gives a letter of credit or guaranty in the name of the partnership, it is not to be treated as of course binding on the partnership, for it is not a„ natural or necessary incident in all sorts of partnerships, for one partner to possess the power to bind his co-partners by a guaranty. It must be shown to be justified, either by the usages of the particular trade or business, or by the known habits of the particular partnership, or by the express or implied approbation of all the partners in the given case. The same rule will apply to cases, where one partner signs or endorses the name of the firm to a note as surety for a third person, in which note the partnership has no interest, and where it is not in the course of their business.” In sec. 128, he says: “Every contract in the name of the firm, in order to bind the partnership, must not only be within the scope of the business of the partnership, but it must be made with a party who has no knowledge or notice, that the partner is acting in violation of his obligation and duties to the firm, or for purposes disapproved of by the firm, or in fraud of the firm. For every such contract made with such knowledge or notice, will be void as to the firm.” In sec, 133, he says: “It maybe taken as a general rule, that when a note, or security, or fund of the firm has been taken in discharge of a separate debt of one partner, the burthen of proof is on the holder or creditor to show circumstances sufficient to repel every presumption of fraud or collusion, or misconduct, or negligence on his own part; unless, indeed, the circumstances already in proof on the other side repel such presumption. . And if the securities or funds of the partnership are received in payment of the separate debt of one partner by his creditor, it will not be necessary for the partners to establish the fact, that the creditor knew at the time that it was a misapplication of the securities or funds, for the very *610 nature of such a transaction ought to put him upon further inquiry, and however bona fide his conduct may be, it is a case of negligence on his part, which will not entitle him to recover against the partnership. At p. 208 in note, he says: “the cases are believed to be uniform from that'of Livington vs. Hastee, 2 Caines, 246, down to the present time, that when a note or other security is given in the name of the firm by one partner for his private debt, or in a transaction unconnected with the partnership business, which is the same thing, and known to be so by the party taking it, the other partners are not bound, unless they have consented. The fact of the paper of the firm being given out of the partnership business by one member, is presumptive evidence of want of authority to bind the other members of the firm; and if the person taking it, knows the fact at the time, he is chargeable-with notice of want of authority, and guilty of concurring in an attempted fraud upon the other partners.” These positions are all well sustained by 14th John. Rep. 544, 16th John. Rep. 34, 19th John. Rep. 154, 3d Wend. 419, 5th Wend. 223, 6th Wend. 619, 7th Wend. 158-310, 1st Wend. 529', 14th Wend. 133. Such is unquestionably the law in the United States.
The bank then having taken the endorsement of Boyers & Saffarrans with full knowledge that it was made by Boyers alone for the accommodation of a third person, and not in the business of the firm or for its use, cannot hold Saffarrans responsible, unless it proves his assent thereto, express or implied, before or after the transaction. This has not been done, in all probability, because it cannot, for the law is well settled, that it may be- shown that the other partners have directly or by fair implication authorized or confirmed the misapplication of the partnership credit, and if the proof could have been made m this case, the presumption is that it would.
As has been said the proof may be presumptive. For if it should appear that a member of a house, with the knowledge of the partners, was in the habit of endorsing at bank or elsewhere for another, such general course of dealing would be sufficient evidence of authority from all the members of the firm, and such use of it by one, would bind all. Duncan vs. *611 Lownds & Bateman, 3 Camp. 478. The authority would not flow from the partnership, but from facts and considerations independent of it. See same point, Wilson vs. Williams, 14 Wend. 146, Rogers vs. Batchelor, 12 Peters, 221, 229, 232, Story on Partnership, 209, in note.
The argument which has been used, that in as much as Boyers & Saffarrans being in a trade which required a credit based hpon endorsements by others, they must reciprocate them, has no weight whatever. It is undoubtedly the practice of mercantile firms (as Mr. Story observes) to endorse the bank paper of each other, by the hand of any one of their members; but upon a strict application of the rule here, and upon some of the cases in England, such paper would not bind the firm, if the bank had knowledge of the facts.
It is not within the purpose and business of a mercantile firm to .endorse paper for its neighbors; such business is not within the contemplation of the partnership, and, therefore, no such authority is implied or attached to any one of the members. Story, 209.
A contrary doctrine might well alarm the commercial community, and be productive of .the worst consequences; under it there would be no safety in partnership pursuits, and strong inducements constantly offered to breaches of trust, involving the ruin of confiding and unsuspecting tradesmen.
Upon the whole view of this case, we are satisfied that the circuit judge has committed no error in the proceedings below, and affirm the judgment.