TUTT & BAKER, Appellants, v. ADDAMS, Respondent.

1. Where a bill is drawn by a partnership firm in favor of a creditor of such firm upon another firm, and is accepted in the name of the firm drawn upon by a partner thereof, who is also a member of the drawing firm, it can not be inferred from these facts alone that the purpose of the parties, or that the effect of the transaction is to subject the funds of the accepting firm to the payment of the debt: these facts alone appearing, a member of the

Tutt v. Addams.

firm drawn upon, although he may not be a member of the drawing firm, and may not have assented to the acceptance, will not thereby be exonerated from liability on the acceptance. The acceptance *prima facie* is on partnership account.

*Appeal from Weston Court of Common Pleas.*

This was a suit against Addams as acceptor of a bill of exchange drawn in favor of plaintiffs by the firm of D. & T. S. McDonnell, upon the partnership firm of McDonnell & Addams, of which latter firm defendant was a member. The following facts were agreed upon as the facts of the case: " That the draft on which the suit is brought was drawn in favor of the plaintiffs for a debt which was due from D. & T. D. S. McDonnell alone to plaintiffs, and in which debt Addams had no concern; that after it was so drawn, it was accepted in the name of the firm of McDonnell & Addams by T. D. S. McDonnell, a member of the firm; and that he accepted the draft without any authority in fact, or assent, from said Addams, unless he had such authority by virtue of being a member of the partnership of McDonnell & Addams, which was a usual partnership in mercantile trade; that the firm of McDonnells & Addams was a distinct firm from that of D. & T. D. S. McDonnell; and that in the latter firm Addams had no interest." Upon the facts so agreed, the court ruled, among other instructions which it is unnecessary to notice, that the acceptance was not binding upon Addams, and that the jury should find for the defendant; whereupon plaintiffs took a non-suit, with leave to move to set the same aside, which motion having been made and overruled, plaintiffs appealed to this court.

*Abell & Stringfellow*, for appellants.
*Gardenhire*, for respondent.

LEONARD, Judge, delivered the opinion of the court.

This cause has not been tried under proper instructions from the court, and the judgment will therefore be reversed and the case remanded, although it may well be that the trial we now

order may result in disclosing that the plaintiffs have no title whatever to recover. The law applicable to the transaction would seem to be plain enough if the facts of the case were fully developed; but we can not declare, as a matter of law, upon this imperfectly stated case, in the language of the court that tried the cause, that the plaintiffs can not recover.

In ordinary commercial partnerships, like the present, each partner has authority to draw and accept bills in the name of the firm, and this is implied from the propriety and necessity of it, in order to carry on the partnership business, and therefore it does not *rightfully* extend to the drawing and accepting of bills on account of affairs foreign to the partnership. But even such bills are binding on the firm in the hands of *bona fide* holders for value, although they do not oblige the partnership in favor of one who had notice of the real consideration, or who gave no value. The invalidity of bills thus drawn, beyond the scope of the partnership business, is said by some courts to proceed from the want of power in the partner to bind his co-partners in such transactions, while, according to other courts, it proceeds from the participation or collusion of the holder in the unlawful act of the partner; but the practical result is the same, no matter upon which ground the admitted invalidity is placed, whether upon the want of power or the fraud. (Per Bronson, in Wilson v. Williams, 14 Wend. 146, 158.) It is no part of the business of mercantile partnerships to draw or accept bills in order to pay the debts of the individual partners, or as security for third persons, and consequently such transactions by one partner are, as between him and his co-partner, beyond his lawful authority, and contrary to his duty, and create no obligation against the other members of the firm in favor of the separate or second creditor, unless they assent to this use of the partnership name; but it has been supposed that there was a difference of opinion between the English and American courts as to the question upon whom the burthen of proving this consent rested. It seems to have been long well settled in this country, that if a partnership obligation be given for the

private debt of one partner, or as security for any third person, the transaction carries on the face` of it notice that the act is beyond the partner's authority, and so devolves upon the creditor the necessity of showing the consent of the other partners to the transaction ; but it was formerly thought that the English rule was, that such instruments were binding unless it was affirmatively shown that the creditor knew that the partner dealing with him had no authority to use the partnership name in that way.    (Joyce v. Williams, 14 Wend. 141; N. Y. F. Ins. Co. v. Bennett, 5 Conn. 575; Maudlin v. The Br. Bank of Mobile, 2 Ala. 503, 512 ; State v. Catskill Bank, 18 Wend. 466, 477 ; Ridley v. Taylor, 13 East. 175.)    However, in the recent case, decided in 1830, of Frankland v. McGusty, before the privy council of England, (1 Knapp's Privy Council Cases, 274,) the Master of the Rolls reported the English law on this subject to be, "that, if there be nothing more in the case, bills drawn by one partner for a separate debt, in the partnership name, could not be recovered upon as against the partnership firm without proof by the creditor of the assent of the partners to the formation of the bills, unless there were such circumstances in the transaction from which the creditor might reasonably infer that the bills were given with the consent of the other partners, (as in the case of Ridley v. Taylor, 13 East. 175,) and that upon proof of such circumstances it lay upon the partners to prove the fraud."

In the present case, therefore, if the bill had been drawn by T. D. S. McDonnell in the name of McDonnell & Addams, on D. & T. D. S. McDonnell, in payment of a debt the latter owed the plaintiffs, the transaction would have been of itself, standing alone, a direct misapplication of the partnership funds, and would not have bound the defendant without proof of his assent to it.    But that is not the case we are dealing with. This bill was drawn by the firm of the two McDonnells on the firm of McDonnell & Addams, payable to the plaintiffs in discharge of a debt due to them from the drawers, and accepted in the name of the drawees by T. D. S. McDonnell, a member

13—VOL. XXIV.

of both firms ; and as an accepted bill is in theory a transfer by the drawer to the payee of a debt due to the former from the person on whom the bill is drawn, if the present transaction was in fact what it in form purported to be, it was an application by the McDonnells of their own property to the payment of their own debts, by turning over for that purpose to their own creditors a debt due to themselves from the defendants' firm. But the *real transaction* may have been altogether different from the *formal one ;* and as the parties were at liberty, notwithstanding the form in which they had clothed their act, to show the real nature of it in order to ascertain their respective rights and duties, the question in the case was, whether the agreed facts repelled the *prima facie* case shown by the bill of exchange, and made out a case for the defendant that authorized the court to tell the jury that the plaintiffs could not recover, without some proof from them that the defendant assented to the use that had been made of the partnership name ; or, in other words, (as there was no such consent in the agreed case,) that the plaintiffs could not recover. If the present bill was drawn by the McDonnells, in the regular course of business, upon their own funds in the hands of the McDonnell & Addams, and delivered to the plaintiffs in payment of what the drawers owed them, and the plaintiffs afterwards presented it at the house of the defendants' firm for acceptance, where it was accepted in the name of McDonnell & Addams, (although by the hand of T. D. S. McDonnell,) upon the credit of the funds in their hands belonging to the drawers, the acceptance was, of course, within the lawful authority of McDonnell as partner, and bound his co-partner without further proof. If, however, it was the purpose of the drawers and payees of this bill to pay off the indebtedness of the former to the latter with the acceptance of the defendants' firm, and thereby substitute that firm in the place of the plaintiffs as the creditors of the McDonnells, and the accepted bill now sued on was adopted as a convenient instrument to effect this purpose, the transaction was beyond the scope of McDonnell's authority as a member of

the firm of McDonnell & Addams, and a fraud upon Addams, and can not be allowed to bind him in favor of the plaintiffs without proof of his assent to the arrangement; and the same result would follow, although the plaintiffs were not parties to such a purpose, if the circumstances of the transaction were such as reasonably to indicate that such would be the effect of it. There is however nothing in the agreed case to repel the presumption arising naturally from the form of the transaction, unless we give that effect to the naked fact that the bill was accepted by T. D. S. McDonnell, a member of the drawing firm, and whose liability therefor, as such, was to be paid by the bill. Both the drawing and the accepting of a bill by one partner in the partnership name is *prima facie* evidence that the transaction is a partnership account, and of course binds all the members of the firm in the first instance without further proof; but if it be shown that the purpose of the parties to the transaction was to pay off the separate debt of the partner, who drew or accepted the bill, out of the partnership funds, the presumption is repelled, and the separate creditor must give proof that the other partners authorized the act. If the creditor take a bill drawn by his separate debtor in the partnership name, the transaction itself, without any further proof, discloses the unlawful purpose; but it is otherwise, if, as in the present case, the creditor take a bill from his own debtors, drawn by them upon another firm, and this bill is afterwards, in the usual course of business, accepted in the name of the firm drawn upon, although by a partner who is also a member of the drawing firm. We can not, in such a case, infer as a matter of law from this latter fact, standing alone, and without any regard to the other circumstances of the transaction, that the purpose of the parties, or even that the effect of the transaction, is to subject the funds of the acceptors to the payment of the debt. This judgment, therefore, must be reversed, and the cause remanded, that the circumstances of the case may be more fully disclosed, and the court enabled to administer justice to the parties, without groping about in the dark

among supposed legal presumptions, in order to get at the right of the case. Judge Ryland concurring, the judgment is reversed, and the cause remanded.