THE UNION NATIONAL BANK OF RAHWAY, NEW JERSEY, Appellant, *v.* HOWARD S. UNDERHILL, Impleaded, etc., Respondent.

Where one member of a firm has a transaction which is neither apparently nor in reality within the scope of the partnership business, the firm is not bound by his declarations or his acts in the transaction, and such declara-

tions are not evidence against the firm or the other partner.    In such a case, the third person has notice that the transaction is outside of the partnership business, and he cannot rely upon the partnership credit.

(Argued April 13, 1886; decided June 1, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 9, 1884, which affirmed a judgment in favor of defendant Underhill, entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*Robert S. Green* for appellant.    Plaintiff being the holder of the paper, regular on its face as partnership paper, with no notice of any defect, was a holder in good faith. (*Magee* v. *Badger*, 34 N. Y. 247; *Belmont Bk.* v. *Hoge*, 35 id. 65; *Welch* v. *Sage*, 47 id. 143; *Seybel* v. *Currency Bank*, 54 id. 288; *Chapman* v. *Rose*, 56 id. 130; *Murray* v. *Lardner*, 2 Wall. 110; *Goodman* v. *Simmonds*, 20 How. [U. S.] 452.) Proof of the existence of facts and circumstances, even if calculated to excite suspicion, will not deprive a party of the right to be considered a *bona fide* holder of negotiable paper. (*Parker* v. *Connor*, 93 N. Y. 127.)    A party acting in good faith on the declaration or representations of one of the partners of a firm is protected, and he is not bound to inquire and ascertain at his peril whether the transaction is not only in appearance, but also in fact, within the authority of the partner. (*Griswold* v. *Havens*, 25 N. Y. 595; *Winship* v. *Bk. of U. S.*, 5 Peters, 529; *Mich. Bk.* v. *Eldred*, 9 Wall. 544; *N. Y. & N. H. R. R.* v. *Schuyler*, 34 N. Y. 30; *Bush* v. *Crawford*, 9 Phila. 392; *Whitaker* v. *Brown*, 16 Wend. 505; *Swan* v. *Steele*, 7 East, 210.)    If a partner gets paper indorsed, or obtains a loan on the representation that it is a firm matter, a party is not chargeable with notice of any fraud in accepting firm paper in place of the partner's individual paper. (Coll. on Part. 650; Pars. on Part. § 130; *Winship* v. *Bk. of U. S.*, 5 Peters, 529; *Whitaker* v. *Brown*, 16

Wend. 505 ; *Catskill Bk.* v. *Stall*, 18 id. 465.) So if a partner borrow money on his own paper for the use of the firm, it is no fraud for him to afterward substitute the note of the firm for his own, and the firm will be bound. ( *Un. Bk.* v. *Eaton*, 5 Humph. 499 ; Parsons on Partnership, § 130 ; *Davidson* v. *Kelly*, 1 Md. 501.)

*Hamilton Odell* for respondent. The authority of one partner to bind his copartners is strictly and without exception limited to transactions within the scope of and pertaining to the business of the partnership. ( *Wells* v. *March*, 30 N. Y. 344 ; *Cockroft* v. *Claflin*, 64 Barb. 464 ; *Elliott* v. *Dudley*, 19 id. 330 ; *Pinckney* v. *Keyler*, 4 E. D. S. 471 ; Story on Part. 193 ; *Geery* v. *Cockroft*, 1 J. & S. 156 ; *Thomas* v. *Stetson*, 62 Iowa, 537.) To constitute the transferee of negotiable paper, wrongfully made, accepted or indorsed · by one partner in the firm name, a holder in good faith, he must receive it in the ordinary course of business, and without knowledge or notice, actual or constructive, of its character. ( *Tanner* v. *Hall*, 1 Penn. St. 417 ; *Elliott* v. *Dudley*, 19 Barb. 330 ; *Kenneys* v. *Richards*, 11 id. 312 ; *Wilson* v. *Williams*, 14 Wend. 146; *Bendel* v. *Hettrick*, 3 J. & S. 406 ; *Stainer* v. *Tysen*, 3 Hill, 282 ; Byles on Bills [4th Am. ed.], 34, marg., and note *w ;* *Calkins* v. *Smith*, 48 N. Y. 618 ; *Gansevoort* v. *Williams*, 14 Wend. 138 ; *Johnson* v. *Hersey*, 70 Me. 74 ; *Mecutchen* v. *Kennedy*, 37 N. J. L. 230.) No transferee of partnership paper who knows, or from any circumstances has reason to believe, that it was issued by one partner for his individual benefit, or in a transaction outside of the partnership business, is a *bona fide* holder of such paper. ( *Stall* v. *Catskill Bk.*, 18 Wend. 478; *Bk. of Vergennes* v. *Cameron*, 7 Barb. 150 ; *Fielden* v. *Lahens*, 3 Trans. App. 220 ; *Osgood* v. *Glover*, 7 Daly, 371 ; *Smyth* v. *Strader*, 4 How. [U. S.] 404, 416.) He cannot enforce it against the other partners without showing their authority or assent. ( *Williams* v. *Walbridge*, 3 Wend. 415 ; *Joyce* v. *Williams*, 14 id. 145 ; *Laverty* v. *Burr*, id. 526 ; *Rust* v. *Hauselt*, 9 J. & S. 467 ; *Butler* v. *Stocking*, 8 N. Y. 410 ; *First Nat.*

*Bk.* v. *Green,* 43 id. 298 ; *Austin* v. *Vandermark,* 4 Hall, 261 ; *Hayes* v. *Baxter,* 65 Barb. 181.) Plaintiff having taken the notes in suit with knowledge that the firm name was being used by one partner for his own purposes in the adjustment of a claim which the plaintiff held against him individually, was not a holder in good faith or for value. (*Atlantic Bk.* v. *Lavery,* 82 N. Y. 299 ; *Comstock* v. *Hier,* 73 id. 269 ; *Phœnix Ins. Co.* v. *Church,* 81 id. 221 ; 21 Hun, 178.) One partner cannot render his copartners liable on a note given for his individual debt by including in it a small indebtedness due from the firm. (*King* v. *Faber,* 22 Penn. 21.) A firm cannot be made liable for money borrowed or goods bought by one partner before the formation of a partnership, although borrowed or bought for the purposes of, and actually contributed to, the partnership stock. (*Brook* v. *Evans,* 5 Watts, 196 ; *Baxter* v. *Plunkett,* 4 Houst. 450 ; *Nat. Bk.* v. *Ingraham,* 58 Barb. 608 ; *Oliphant* v. *Mathews,* 16 id. 608 ; *Nat. Bk.* v. *Thomas,* 47 N. Y. 15 ; *Peterson* v. *Roach,* 32 Ohio St. 374.)

Earl, J. The plaintiff commenced this action against the defendants Cheney and Underhill, to recover against them upon three promissory notes dated July 27, 1877, payable to the order of B. A. Vail, and made by Jesse S. Cheney & Co., a firm composed of the two defendants. The three notes amounted to about $5,700, and were at or about their date indorsed by Vail, and delivered to the plaintiff. The defendant Underhill alone interposed an answer, in which he alleges that these notes were made by Cheney without his knowledge or consent and delivered to the bank in payment of Cheney's individual debt, and that the plaintiff knew this. After hearing the evidence the court sustained Underhill's defense and directed a verdict in his favor ; and the main question for our determination is whether there was any evidence which required the submission of the case to the jury.

We think it was clearly established that these notes were made by Cheney in the name of the firm without the knowledge or consent of his partner ; that they were delivered to

plaintiff for the purpose of paying the individual debt of Cheney; that the plaintiff knew that Cheney was issuing this partnership paper to pay his individual debt, and it was bound to know that he had no right to use it for that purpose without the consent of his partner, and was chargeable with knowledge that the notes were wrongfully made and issued. Each member of a firm is the general agent of the firm in relation to all the business of the firm, and can bind the firm in what he says and does in such business. But when one partner has a transaction with a third person which is neither apparently nor really within the scope of the partnership business, the partnership is not bound by his declarations or acts in the transaction. He cannot by his declarations make that a partnership transaction which does not appear to be such and which is apparently and really an individual transaction. In such a case the third person has notice that the transaction is outside of the partnership business and he cannot rely upon the partnership credit. (Byles on Bills [7th ed.], 48; Pars. on Part. [2d ed.] 116; *Rogers* v. *Bachelor*, 12 Pet. 221; *Mecutchen* v. *Kennady*, 27 N. J. L. 230; *Wilson* v. *Williams*, 14 Wend. 146; *Thorn* v. *Smith*, 21 id. 365; *Kemeys* v. *Richards*, 11 Barb. 312; *Elliott* v. *Dudley*, 19 id. 326; *Farmers & Mechanics' Bk.* v. *Butchers & Drovers' Bk.*, 16 N. Y. 125.) In Byles on Bills it is said: "The taking a joint security for a separate debt raises a presumption that the creditor who took it knew that it was given without the concurrence of the other partners." In Parsons on Partnership it is said, that " whenever a party receives from any partner, in payment for a debt due from that partner only, whether the debt be created at the time or before existing, or by way of settlement of, or security for a debt, or indebtedness, an obligation of the firm in any form, the presumption of the law is, that the partner gives this and the creditor receives it in fraud of the partnership and has consequently no demand upon them." In *Farmers & Mechanics' Bk.* v. *Butchers & Drovers' Bk.*, it is said that " each of the partners is the agent of the partnership as to all matters within the scope of the partnership

business, and can bind the firm by making, indorsing and accepting bills and notes in such business; but he has no more authority than a mere stranger to execute such paper in his own business or for the accommodation of others. If he gives the partnership note or acceptance for his own debt, it is void in the hands of any party having knowledge of the consideration for which it is given."

Cheney, for some time prior to the giving of these notes, had been dealing with the plaintiff. He drew checks in his own name on the East River Bank of New York, and procured them to be cashed by the plaintiff, and these checks for the security of the bank were indorsed by Vail. At one of the times when he procured the plaintiff to cash a check, he said to its president, "my partner has or should have the money for this to-day, but he has not got it, or cannot get it, and we want this amount." It is now claimed on the part of the plaintiff that this gave it the right to suppose that the money which was given to Cheney upon his check was for the benefit of the partnership, and hence that the check was in the partnership business. Subsequently other checks were drawn by Cheney and cashed by the plaintiff, and paid by the bank upon which they were drawn. Finally a check for upwards of $5,000 was drawn by Cheney, indorsed by Vail and cashed by the plaintiff, which was protested for non-payment, and these notes were given to take up that check. We do not think that what was said by Cheney to the plaintiff's president under the circumstances authorized an inference that he was procuring the money for the firm or in its business. All of the checks were his individual checks and not the firm checks, and the bank had no reason to infer that he was drawing his individual checks in the firm business, or to procure money on the firm account or firm credit. The money was loaned on his individual check and on the credit of Cheney and the indorser, and not on the credit of the firm. It was in form and in fact Cheney's check, and the president of the bank testified that he cashed the check on the responsibility of Vail, the indorser. We do not think that it is a just inference, from the language

said to have been used by Cheney, that the checks were made in the business of the firm. But the declaration of Cheney made in a transaction which was really as well as apparently his individual transaction, outside of the firm business, could not make evidence against the firm or his partner. In *Hickman* v. *Reineking* (6 Blackf. 387), where A., being in partnership with B., collected a sum of money in his individual capacity for C., and afterward executed to the latter a note in the name of the firm for the amount, and a suit was commenced against the firm on the note, the plaintiff offered to prove that A., during the existence of the firm, had declared that the money had been used by him and his partner in the partnership business, and it was held that the evidence was inadmissible. In *Thorn* v. *Smith* (*supra*), it was held that it was not competent for one partner by his declarations, even during the existence of the partnership, to change what, on the face of the transaction, appeared to be his individual debt into a debt against the firm.

During the progress of the trial Vail, called as a witness for the plaintiff, was asked this question : " Did you ever have any conversation with Mr. Cheney in reference to his partnership in connection with indorsing checks or paper ? " Counsel for Underhill objected to the question as incompetent as against him, and the objection was sustained and counsel for plaintiff excepted. Then this question was asked: " Was any representation made by Mr. Cheney to you that any of this money which was to be raised on checks indorsed by you was for the purpose of the business of the house ? " Underhill's counsel objected to this question as incompetent as against him, and the objection was sustained, and plaintiff excepted. It is now claimed that the rejection of this evidence was error. We do not think that what Cheney said to Vail, not communicated to the plaintiff, was competent or material. The declarations sought to be proved were made when Cheney was engaged in a transaction both apparently and really without the scope of the partnership business, and hence for reasons already stated were incompetent as against Underhill.

The plaintiff did not take these notes as assignee of Vail or from Vail in such a sense that it can stand in his shoes, but the notes were made and delivered to Vail, and by him delivered for Cheney to the bank to satisfy Cheney's debt to the bank, and they had no inception until their delivery to the bank.

The mere fact that Cheney could not testify that some small portion of the money obtained by him of the plaintiff was not used for the firm was of no importance. The debt was in form the debt of Cheney, and if plaintiff claimed that it, or any part of it, was created for the benefit of the firm, it was incumbent upon it to prove that. The mere inability of Cheney to testify that no part of the money was used for the firm proved nothing.

We are, therefore, of the opinion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.