FRANK SPAULDING, AS ASSIGNEE, ETC., RESPONDENT *v.*
JAMES H. KELLY, SURVIVOR, ETC., APPELLANT.

*Negotiable paper — when one discounting notes made in the name of a firm, and crediting the proceeds to the individual account of one partner, is not a* bona fide *holder of the notes — who are deemed to be private bankers under sections 68 and 69 of chapter 409 of 1882.*

This action was brought by the plaintiff, as the assignee for the benefit of creditors of certain persons engaged in carrying on business as private bankers, under the name of Witmer Brothers, to recover the amounts due on two promissory notes, one dated May 13 and the other May 31, 1884, made by one Joseph E. Ways, one of the members of a firm composed of the said Ways and the defendant Kelly, the survivor of said firm, in the firm name to his own order; and by him indorsed and delivered to the plaintiff's assignors, who, at his request, discounted the said notes and credited the proceeds of each of said notes to the individual account of the said Ways, which account was subject to, and was thereafter paid out by said Witmer Brothers upon, the personal check of said Ways. The referee found, among other things, that each of said notes was the last of a series extending in the case of one note through nineteen, and of the other through sixteen renewals of two months each; that Ways was the financial member of the said firm, and by and with the knowledge and consent of Kelly, negotiated all drafts and other evidences of debt belonging to said firm, and also attended to such banking business as such firm had; that

Kelly had no actual notice or knowledge of the making, indorsement or negotiation of said two promissory notes, or of the notes in renewal of which they were given, prior to the death of Ways, which occurred on June 7, 1884; that no part of the consideration of either of said two notes ever came to the use or for the benefit of the defendant Kelly individually; that, at no time during the life of either of said series of notes, or at the time of giving, transferring or discounting the two notes in suit, did said Witmer Brothers have any notice or knowledge of the fact that Kelly was ignorant of the existence of said series of notes, or of the making or discounting of the two notes in suit.

*Held,* that Witmer Brothers were not *bona fide* holders of the notes.

That they were bound to know that Ways had no right to use the partnership to create or increase his individual credit or account at the bank without the consent of his partner, and were chargeable with notice that the notes were wrongfully made and issued.

That the transaction was neither apparently or really within the scope of the partnership business, and the partnership was not bound by the act of Ways in the transaction.

The defendants claimed that the notes were void for usury.

*Held,* that the defense was not available against the principal amount secured by the notes as Witmer Brothers were private bankers within the meaning of that term as used in sections 68 and 69 of chapter 409 of 1882.

*Perkins* v. *Smith* ( 41 Hun, 47) followed.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

The action was brought upon two promissory notes made in the name of the defendants' firm. The referee found that the defendant James H. Kelly and one Joseph E. Ways were partners, under the name of Ways & Kelly, from October, 1876, to about June 7, 1884, when Ways died; that about May 3, 1884, Ways, in the name of the firm, as makers, made their promissory note of that date for $2,000, payable in thirty days, to the order of himself, at the bank of plaintiffs' assignors, for value received, and said Ways then indorsed and delivered said note to said assignors for a valuable consideration; that, before the commencement of this action, said note, with all the other property of the assignors, was transferred to plaintiff for the benefit of their creditors, and he is now the owner of said note, which remains unpaid; that about May 31, 1884, said Ways, in the name of the firm, as makers, made their promissory note of that date for $2,000, payable in fifteen ———— after date, to the order of himself, at the Manufacturers and Traders'

Bank, in Buffalo, for value received, and said Ways then indorsed and delivered said note to the plaintiff's assignors, for a valuable consideration ; that, before the commencement of the action, the plaintiff, as such assignee for the benefit of creditors, became the owner of said note, which is wholly unpaid ; that the business of said Ways & Kelly was buying and selling grain, and was carried on at Lewiston, N. Y. ; that plaintiff's assignors, during the existence of the firm of Ways & Kelly, were partners at Suspension Bridge, N. Y., under the name of Witmer Brothers, their business being that of private bankers, bill or note brokers, and money lenders; that they had no corporate existence or organization as a bank, but the business of said firm was done and its accounts kept in the ordinary mode pursued by banks; that said note of May 3, 1884, was indorsed by Ways — "Pay Witmer Brothers' Bank, J. E. Ways" — and presented to said Witmer Brothers, who then and there discounted it at the request of Ways, and paid him therefor $1,986, and no more ; that said note of May 31, 1884, was, on that day, indorsed by Ways — "Pay Witmer Brothers' Bank, J. E. Ways" — and presented to said Witmer Brothers, who then and there discounted it, at the request of Ways, and paid him therefor $1,992, and no more ; that the firm of Ways & Kelly was solvent till its dissolution by the death of said Ways ; that each of said notes was the last of a series extending, in the case of the note of May 3, 1884, from February 28, 1881, through nineteen renewals, of two months each ; and in the case of the note of May 31, 1884, from October 31, 1881, through sixteen renewals, of two months each ; that each note of each series was made by Ways, in the name of Ways & Kelly, payable to the order of Ways and indorsed by him, and discounted by Witmer Brothers, at his request, at a discount of eight and four-tenths per cent per annum, in advance, for the time it had to run, and the proceeds of each note of each series was credited on the books of Witmer Brothers to the account of Ways; that the discount taken by Witmer Brothers on each of the two notes in suit, was taken by them knowingly and with intent to secure to themselves more than the legal rate of interest, and Ways knew that such rate of interest was charged and taken for that purpose and consented thereto ; that at no time during the life of either of said series of notes, or at the time of giving, transfer-

ring or discounting the two notes in suit, did said Witmer Brothers have any notice or knowledge of the fact that Kelly was ignorant of the existence of said series of notes, or of the making or discounting of the two notes in suit. Other findings of the referee are set forth in the opinion.

*Joel S. Walker*, for the appellan...

*L. F. Bowen*, for the respondent.

ANGLE, J.

A leading point in this case arises on defendant's exception to the conclusion of law of the referee, that Witmer Brothers, at the time of the discount of the two notes in said suit, became *bona fide* holders and owners thereof. The portion of the opinion of the referee in which this point is considered is : " Assuming it to be a fact that no portion of the proceeds of this paper ever passed to the benefit of Ways & Kelly, or Kelly individually, I do not find in any of the authorities cited by counsel for the defendant, each of which to the number of about 100 I have carefully examined, any rule of law that would prevent the recovery by a *bona fide* holder of this paper against the firm of Ways & Kelly, arising out of any failure on the part of Ways to apply the money to the benefit of his firm. Ways was the financial member of the firm, he raised the money required by the business of Ways & Kelly to be raised upon drafts, shipping bills or other evidences of debt, and it would be hard indeed to charge the general public with loss from any abuse by Ways of the relation which he sustained to his partner.. "

In his sixth finding of fact the referee also says : " Ways was the financial member of the said firm and by and with the knowledge and consent of said James H. Kelly negotiated all drafts and other evidences of debt belonging to said firm, and also attended to such banking business as said firm had in the course of its operations."

It is to be observed that the referee nowhere finds that Ways ever made, issued or used any promissory notes or other obligations purporting to be made, or made, by Ways & Kelly, except the notes in the series under examination in this case, and the above finding of the referee gives no legal presumption that Kelly knew his partner was using the firm credit for any purpose outside the business of the firm, especially in the face of a finding in the fourth

finding of fact, that: " Kelly had no actual notice, or knowledge of any or either of said notes of either series prior to the death of said Ways." And also, his ninth finding of fact: " That the defendant, James H. Kelly, did not know of the making, indorsement or negotiation of said two promissory notes at the time the same were so, as above stated respectively, made, indorsed and negotiated by said Joseph E. Ways, and no part of the consideration of either of said two notes ever came to the use or for the benefit of the defendant James H. Kelly, individually."

There is no finding that any portion of the money arising from the discount of any note in either series ever came to the use or benefit of the firm of Ways & Kelly. It is clear, that the report of the referee (so far as this point is concerned) must stand or fall upon the sole ground on which the referee has put plaintiff's right to recover in the first conclusion of law, viz : " That said Witmer Brothers, at the time of the discount of each of said two notes upon which this action is based, became *bona fide* holders and owners thereof, and the plaintiff succeeded by said assignment to all their rights and interests therein."

The question of *bona fides* in this case is a mixed question of law and fact, and the above conclusion of law arrived at by the referee must be regarded as a conclusion from the facts he had previously found. His tenth finding of fact is : " That the proceeds of each of said two promissory notes were, by said Witmer Brothers, placed to the individual credit of said Joseph E. Ways upon their books, and as a part of the discounting of the same, and the said individual account of said Joseph E. Ways was, therefore, subject to and paid out by said Witmer Brothers upon the personal check of said Joseph E. Ways." Upon these facts Witmer Brothers were not *bona fide* holders.

In the case of *Union National Bank* v. *Underhill* (102 N. Y., 336) one Cheney had made the notes of his firm payable to the order of a third person, who indorsed them, and then they were delivered by Cheney to the bank in payment of an individual debt he owed it. And the court stating the law, and applying it to the case, say (p. 340) : " Plaintiff knew that Cheney was issuing this partnership paper to pay his individual debt, and it was bound to know that he had no right to use it for that purpose without the consent of his partner,

and was chargeable with knowledge that the notes were wrongfully made and used. Each member of a firm is the general agent of the firm, in relation to all the business of the firm, and can bind the firm in what he says or does in such business. But when one partner has a transaction with a third person, which is neither apparently nor really within the scope of the partnership business, the partnership is not bound by his declarations or acts in the transaction. He cannot, by his declarations, make that a partnership transaction which does not appear to be such, and which is, apparently and really, an individual transaction. In such a case the third person has notice that the transaction is outside of the partnership business, and he cannot rely upon the partnership credit." The referee has found that " immediately following, and as a part of the discounting of the same," the proceeds of said two notes were, by Witmer Brothers, placed to the individual credit of Ways, and were thereafter subject to, and paid out upon, his personal check.

With a slight change in the language of the Court of Appeals in applying the above principle to the case before it, we may apply the same principle to the case before us and say that Witmer Brothers were bound to know that Ways had no right to use the partnership to create or increase his individual credit or account at the bank without the consent of his partner, and they were chargeable with notice that the notes were wrongfully made and issued. The transaction was neither apparently or really within the scope of the partnership business, and the partnership was not bound by the act of Ways in the transaction. It appeared to be, and really was, an individual transaction of Ways, and Witmer Brothers had notice that the transaction was outside the partnership business and they could not rely on the partnership credit.

Nor do we think the condition of plaintiff improved by the fact that each of these two notes was the last of a long series of notes which had been used by Ways in the same manner to sustain his individual credit and funds with his bankers, nor by the fact that at no time during the life of either of said series of notes, or at the time of the giving, transferring or discounting of the two notes in suit, respectively, did said Witmer Brothers have any notice or knowledge of the fact that Kelly was ignorant of the existence of said notes.

The law, as stated in 1 Daniels on Negotiable Paper (sec. 357), is that the negotiation of notes being incidental to and usual in the business of copartnerships for the purposes of trade, it follows that when a copartner borrows money professedly for the firm, and executes therefor a negotiable instrument in the copartnership name, it will bind all the partners, whether the borrowing was really for the firm or not, or whether he misapplies the funds or not, provided the lender is not himself cognizant of the intended fraud. In the present case Ways did not profess to procure this discount for the firm, but for himself, and Witmer Brothers were cognizant of the fact that the discount was to increase the individual credit and funds of Ways, for the fact that the proceeds were to go in that way was part of the discounting.

Another point made by defendant arises upon the blank in the note of May thirty-first, after the word "fifteen," that it was not proven to be due; that the time of payment was left out by mistake, and the omission was not supplied by proof. The referee has found, upon sufficient evidence, that the intention and meaning of said note between Ways and the witness was that it should become due and payable fifteen days after date, and that the same was so treated between the parties, and this finding disposes of this point against the defendant.

Defendant also makes the point that the note was void for usury. This question, and the points depending upon it, need not be discussed, for the court, in this department, have held in *Perkins* v. *Smith* (41 Hun, 47) that such bankers as Witmer Brothers were private bankers under Laws 1882 (vol. 1, pp. 607, 608, chap. 409, §§ 68, 69), and that the defense of usury was not available against the principal secured by notes discounted by them.

Defendant also claims that the referee erred in not allowing, as against each note, the interest paid upon the whole series of notes of which it was the last. This matter was not pleaded; and this case comes up on a bill of exceptions, and the bill does not show that the point was made upon the trial, nor do the exceptions to the report of the referee make the point, unless an exception to the total amount the referee held the plaintiff entitled to recover is held to be an exception to the non-allowance of this deduction. The objection, we think, is not specifically presented upon the

record, and cannot now be raised. In *The National Bank* v. *Lewis* (75 N. Y., 516), cited by defendant's counsel, these matters were set up in the answer. It does not seem to be necessary to consider specially the other points made by defendant.

A new trial should be granted before a new referee, costs to abide the event.

HAIGHT and BRADLEY, JJ., concurred.

Judgment reversed and a new trial ordered before another referee, costs to abide event.