By the Court.—O’Gorman, J.
The only questions to be now considered, are questions of law. The material facts as found, are as follows. The plaintiffs were, in June, 1884, wholesale merchants, carrying on business in Indianapolis under the firm name of “ Charles Mayer & Co.” They required in their business the frequent use of foreign exchange. They had their bank account and kept a large deposit with a private bank in Indianapolis, called Harrisons’ Bank, of which bank the firm of A. and J. C. S. Harrison were proprietors. The defendants were bankers and dealers in foreign exchange in New York city under the firm name of “Heidelbach, Ickelheimer & Company.” The plaintiffs had, for many years, been in the habit of procuring foreign exchange from the “ Harrisons,” and of paying them for the drafts, when received by them, by drawing checks for the price of the draft, on Harrisons’ bank, against their (plaintiffs’,) deposit in that bank. The Harrisons had been, for many years, dealing with the defendants for the purchase of such foreign exchange as was required by the plaintiffs, and of paying the defendants for their drafts on Europe when received by them (the Harrisons) at Indianapolis, by remitting immediately, and by next mail, their check on a bank in New York city in favor of defendants for the price of the drafts. In June, 1884, the plaintiffs applied to the Harrisons for drafts on Berlin, payable to the order of Charles Mayer .& Co., sending them a memorandum of what they required. The Harrisons thereupon wrote to defendants, indos *440 ing plaintiffs’ memorandum with a request in this— their usual form—“ as per inclosed memorandum, send to us your sight draft on Berlin to the order of Charles Mayer & Co. of B. M. $-with statement of cost, and we will remit as usual, etc.” The defendants sent to Harrisons the drafts on Berlin, as required by plaintiffs, and on delivery of them to plaintiffs in Indianapolis, the plaintiffs immediately paid the Harrisons for the drafts, by drawing a check for the amount, according to their custom, on the Harrisons’ bank in favor of Harrisons, against their deposit there, which was then ample in amount to meet the check.
The Harrisons did not pay the defendants according to their custom, by remitting to them by return of mail, check on a New York city bank for the amount of thé drafts sold them, but immediately after the delivery of the drafts to the plaintiffs and the payment for the same by them.to Harrisons, the Harrisons’ bank stopped payment and has been, and is now, insolvent. The drafts were presented to the drawee in Berlin for payment, and payment was refused—and the plaintiffs bring this action against the defendants to recover the amounts of the drafts and ten per cent., in lieu of interest and other expenses, pursuant to statute. On payment by the plaintiffs to the Harrisons for these drafts by check on the Harrisons’ bank, that bank, as was the custom, charged the check against the deposit account of the plaintiffs, and the check was entered in the plaintiffs’ bank book, and the check itself was afterwards returned to the plaintiffs with the bank’s cancelling mark upon it. The plaintiffs had no knowledge of the nature and condition of the dealings between Harrisons and defendants as the purchase of these drafts.
On these facts the questions now arise:
First:—Did the Harrisons acquire a good title to the drafts as against the defendants as vendors ?
Second:—If they did not acquire such title, did the plaintiffs become purchasers of the drafts from Harrisons *441 for a valuable consideration so as to defeat any equitable claim in favor of defendants ?
The learned trial judge held in favor of the "defendants on both questions.
As to the first question there can be little doubt but that the ruling of the learned trial judge was right.
. The invariable custom of dealing between Harrisons and the defendants, was that they should pay defendants for the drafts by return of mail. The drafts in question were sold expressly in accordance with that custom. No credit was extended. The sale was made on expectation of immediate payment. The defendants have still a lien on their drafts and the right to rescind the sale; and their right to follow and reclaim the drafts upon the insolvency of the Harrisons, was an equitable and legal right. Muller v. Pondir, 55 N. Y. 325, 337.
On the second question, the trial judge found also against the plaintiffs, and it is strenuously contended on behalf of the plaintiffs, that the ruling on that point was incorrect. The relations between the plaintiffs and Harrisons’ bank as to the plaintiffs’ deposit, were those of debtor and creditor. The bank owed the whole amount of the deposit to the plaintiffs, and it was payable to their order in cash on demand. The result of their drawing their check on Harrisons’ bank in favor of Harrisons for the price of the draft, was to cancel their claim against the bank to that extent and reduce the amount of their deposit. The claim of Harrisons against the plaintiffs for the price of the drafts was also satisfied, and was thus, as it seems to me, equivalent to actual and bona fide payment in cash for the drafts.
Under the English authorities such a transaction would have given to the plaintiffs all rights of a purchaser for a valuable consideration. Daniels on Negotiable Instruments, §§ 827, 828, et seq.
The rule laid down in the leading cases in New York, is that to constitute the transferee of a negotiable instrument a purchaser “ for value,” so as to protect him against *442 defenses available against his transferer, he must pay something in money or property—some subsisting debt must be satisfied or suspended, or new responsibility incurred ; and that the mere transfer of the paper as collateral security for an antecedent debt or liability does not, _per se, place the transferee on the superior footing of a holder for value. Daniels on Negotiable Instruments, where various leading New York decisions are collected. § 831, C. The question was further examined in Phœnix etc. Co. v. Church, 81 N. Y. 221 (1880). The court there, after an exhaustive review of the authorities in this state, thus expressed its opinion :—
“ In view of this long line of authorities, it must be regarded as the settled doctrine in this state, that the surrender by a creditor of the past due notes of a debt- or, upon receiving from him, in good faith, before maturity, the note of a third pérson, in place óf the note surrendered, constitutes the creditor a holder for value of the note thus taken, and protects him against the defenses and equities of the antecedent parties, and that it is immaterial whether the note surrendered was given to the creditor for goods sold, or money loaned, or under circumstances, which would leave the original debt represented-by the note in existence, enforceable against the debtor, or whether by surrendering the note the creditor parted with his entire right of action.”
In the case at bar, the act of giving plaintiffs checks on Harrisons’ bank in favor of Harrisons, satisfied and cancelled plaintiffs’ claim against the bank for money due the plaintiffs by the bank, to the amount covered by the checks; and by that act also, the drafts then sold and delivered by Harrisons to the plaintiffs, were paid for and this result was not conditional but absolute.
That on the refusal of the drawee of the drafts to pay them, an action might accrue to plaintiffs against Harrisons to recover the money paid them by the plaintiffs on the purchase of drafts which turned out worthless, *443 does not alter the rights of plaintiffs against the defendants.
In the extract from the opinion of the court given above, this contingency seems to have been considered and dismissed as unimportant. See also Pratt v. Coman, 37 N. Y. 442.
There can be no question as to the bona tides of the plaintiffs in the case at bar or of the intention of them and Harrisons that full title in the drafts should be conveyed' to the plaintiffs in consideration of the payments made them in the usual way—that is, by checks against their deposit in the Harrisons’ bank. That was the method of payment invariably adopted by them. It was not a nominal payment only, but actual, sufficient, final, and conclusive; and Harrisons’ bank have now in their hands the money of plaintiffs which the checks represented. Before receipt of these checks, they owed that money to the plaintiffs. On delivery to plaintiffs of the drafts, that money ceased to be due by them to the plaintiffs, but became the money of the Harrisons by means of the plaintiffs’ check given to the Harrisons.
The antecedent debt of the bank to plaintiffs was so far absolutely satisfied, and that constitutes a valuable consideration. Rome Bank v. Craig, 102 N. Y. 336.
This is a case where one of two innocent parties must suffer. Both acted in equal good faith. The plaintiffs acquired the actual possession of the drafts by the act of the defendants. The plaintiffs paid for the drafts to the person who had the apparent ownership of the drafts and apparently full title to transfer them. The transfer by him x to them, was, as such transfers had always been made. The plaintiffs’ payments for the drafts to their transferer was exactly as such payments had invariably been made theretofore. In my opinion, the plaintiffs claim is superior to that of defendants, and the legal title to the drafts was vested in them free from any equities in the defendants.
*444 The judgment should be reversed, and a new trial ordered with costs to appellants to abide the event.
Sedgwick, Ch. J., and Freedman, J. concurred.