Van Brunt, P. J.
The plaintiff in this action, as assignee of the firm of Booth, Carman & Co., sues the defendants who, under the name of Vanderbilt & Hopkins, did business as commission merchants in lumber in the city of New York.
The complaint alleges amongst other things an indebtedness of $1,050.59 upon the part of the defendants to the said firm of Booth, Carman & Co., being the balance due upon an account for goods sold and delivered. The answer afieges payment.
*811 It appears from the evidence that Alfred W. Booth, James L. Carman, C. N. Simon and John H. Wemple, from May 25, 1881, to February 21, 1882, were co-partners in business at Norfolk, Virginia, under the firm name of Booth, Car-man & Co., and were engaged in the business of manufacturing lumber. Alfred Booth lived at Bergen Point, New Jersey, and attended to the financial part of Booth, Carman & Co'., in New York. He also did at Bergen a lumber business as Alfred W. Booth & Co., with other partners not connected with this controversy; Wemple also did an independent lumber business at Norfolk, Va.
The plaintiffs’ claim is that between May, 1881, and February 21, 1882, Booth, Carman & Co., sold the defendants merchandise of the value of $25,824.75, and received payment therefor of $24,774.20, leaving a balance due on the 20th of February, 1882, of $1,050.50, for which this suit was brought.
There is no dispute as to the sales and delivery of the merchandise or the amount of the above payments thereon. But the question litigated was as to the right of the defendants to apply their indebtedness to Booth, Carman & Co to the payment of a claim due to them from John H. Wemple
It appears that on or about the 6th of February, 1882, the defendants received from Wemple a letter advising them of two drafts, one for $1,732.85 and the other for $750, drawn by himself upon them. In the letter of advice Wemple stated that these amounts were' the last two notes of theirs (referring to Booth, Carman & Co.) that were to be paid by him. He further wrote that the defendants had on hand, or would have, about $1,500, and as they (Booth, Carman & Co.) had left the things in his hands, he requested them to pay nothing on account except on account of himself. The next day the defendants received the draft for $1,732.85, but nothing was ever done about the proposed draft for $750.
It was claimed that at the time of the acceptance of Wemple’s draft, the defendants were not indebted to Booth, Carman & Co. and had nothing in their hands for their account, but that they accepted the draft upon the faith of Wemple’s representations that goods would thereafter arrive, the proceeds of which the defendants might apply upon this acceptance; and it appeared in proof that the indebtedness sued for arose from the sales of goods received subsequent to the acceptance of Wemple’s draft.
There was also evidence going to show that Carman, of the firm of Booth, Carman & Co., assented to the application of the balance due said firm, to the indebtedness created by Wemple by the drawing of the draft of $1,732.85 above mentioned.
Shortly after the receipt of the letter, and before the re *812 ceipt of the draft, the defendants claim to have seen Mr. Booth, and that the letter was shown to him, and he said that it was all right, that everything had been turned over to Wemple to make him whole on the notes, referring to Booth, Carman & Co.’s notes that Wemple held for logs sold by him to them.
This evidence was contradicted on the part of Mr. Booth, and the question submitted to the jury was whether there was any indebtedness due from the firm of Booth, Carman & Co. to Wemple individually, and whether the members of that firm had assented to the application of the balance due from the defendants to them to the payment of the amount which had been paid by the defendants upon Wemple’s draft.
The jury were instructed that if the indebtedness from the firm of Booth, Carman & Co. to Wemple existed, and that it was to pay that indebtedness that this draft was given and the application of the money made, then the assent of one member of the firm would be sufficient. If, however, there was no indebtedness from Booth, Carman & Co. to Wemple, the assent of the individual members of the firm of Booth, Carman & Co. to the application must be shown in order to prevent a recovery. The jury was also instructed that if Mr. Simons, a member of the firm of Booth, Carman & Co., took no active part in the management of the business, that his assent was not necessary to be shown.
It is claimed upon the part of the appellants that whether this be regarded as a set-off or as an estoppel against the plaintiff, or Booth, Carman & Co., or as the authorized appropriation of payment and payment made and assented to prior to the assignment of the claim of Booth, Carman & Co., the defense should prevail.
It is admitted that as a general rule the debtor of a firm cannot set off against his indebtedness to the firm any demand which the debtor may have against an individual member of the firm, but it is claimed that because of the exception to this rule, where all concerned concur that a debt owing by one of them shall be set off against the debt owing to them all, the application of the general doctrine above mentioned will be precluded.
Attention is also called to another exception 'which occurs where one partner has been allowed by his co-partner to act as if he were the principal and not an agent of the firm, or where it can be shown that the other members of the firm have, by their conduct, induced the defendant to believe that such partner is the only person with whom he had to do; or where, in a cause of action by a firm for money due to them from the defendant for goods of the *813 firm sold to him, the latter has been held entitled to set off the debt due to him for an advance made by him to one of the partners on account of. these goods.
To support the verdict of the jury in this case it is not at all necessary to run counter to any one of these propositions, because the jury have found, upon competent evidence, that all concerned did not assent to the proposition that any part of the indebtedness from the defendants to the firm of Booth, Carman & Co., might be applied to the payment of the draft of Wemple; and because there is no evidence in the case that one partner had been allowed by his co-partners to act as if he were the principal and not an agent of the firm. It is true that the defendants claim that Mr. Booth made the representation that he had turned over all this business to Wemple. But this evidence was contradicted by Mr. Booth on the stand, and the jury seem to ha,ve believed him.
The evidence seems to show that the defendants knew that this was an individual obligation on the part of Wemple when he drew the draft in question. It' is true that Wemple represented himself as being the creditor of the firm, and also that they had turned over all their affairs to him for management. But the firm were no more bound by those representations of Wemple than they would have been had Wemple represented to the defendants that all the members of Booth, Carman & Co. had individually assented to the application of the money to be received from the merchandise to be thereafter shipped to them to the payment of his (Wemple’s) debt. If the defendants accepted the shipments which subsequently came to hand, they accepted them with knowledge that the merchandise was the merchandise of Booth, Carman & Co., and that Wemple’s position was to apply the same to the payment of an individual draft of his own.
The case of Gordon v. Ellis (7 Manning & Granger, 607) in no way supports the proposition contended for by the defendants in this case. It appears upon an examination of that case that at the time of the agreement in reference to the sale of the property, and of the advances on account of such anticipated sale, the person making the advances believed the person to whom the advances were made to be the sole owner of the property, he having no knowledge whatever that anybody else had any interest in it, and that the other persons interested in the property suffiered and permitted the person who received the advance to deal therewith as his own.
It thus appears that elements which in no way entered into the case at bar were the grounds upon which the claim was defeated in the case cited. It was the simple *814 ordinary apphcation of the rule that where one suffers another to deal with personal property as his own, he cannot subsequently claim, such property from a bona fide pur chaser who bought, supposing that the seller had a perfect right to dispose of the same.
Our attention is called to the case of the Steuben County Bank v. Alberger (101 N. Y., 202), where it is claimed that the court laid great stress upon the fact that the obligations in controversy were intended to be used in retiring other obligations of the firm and that they were, therefore, within the general ample powers of one partner. The distinction between that case and the case at bar is apparent. The jury in the case at bar have found that there was no indebtedness from Booth, Carman & Co. to Wemple, to the retirement of which the proceeds of Wemple’s draft could be applied.
The case of Union National Bank v. Underhill (102 N. Y., 336; 2 N. Y. State R., 48), seems to be a direct authority upon the point that the representations of Wemple were no evidence against the firm of Booth, Carman &; Co. or any other member of that firm. Wemple, at the time of of writing the letter in question, did not pretend to be acting for the firm of Booth, Carman & Co. He wrote the same in connection with his own individual business. The whole tenor of the letter is that of an individual letter, he in no respect attempting to represent that firm by an expres - sion contained in the letter itself.
In the case of Wallace v. Kelsall (7 Mees. & Wels., 264), the ground upon which the decision seems to have been put was that there had been a complete discharge of the debt by one of the plaintiffs, and in that respect it materially differs from the case at bar.
Upon the whole case, therefore, it would appear that as Wemple, without the assent of all his partners, could not set off the debt due to Booth, Carman & Co. to the debt due by him to the defendants, and as the jury have found that no such assent had been given, and as there was sufficient evidence to sustain that finding, and the jury having also found that there was no indebtedness existing from Booth, Carman ,& Co. to Wemple, there seems to be no ground upon which the claim of the defendants can rest that they had a right to apply their indebtedness to Booth, Carman & Co. to the liquidation of any part of the advances which they made to Wemple.
The judgment should be affirmed with costs.
Daniels, J., concurs.