FIRST NATIONAL BANK OF ANN ARBOR, MICHIGAN, Respondent, v. JOHN FARSON and WILLIAM FARSON, Individually and as Copartners Doing Business under the Name and Style of FARSON, SON & COMPANY, Appellants.

First Department, May 18, 1917.

Contract — agreement by member of partnership doing a brokerage business to repurchase bonds bought by customer — implied authority — evidence — presumption — burden of proof.

The question as to whether a member of a partnership engaged in banking and dealing with investment securities has implied authority to guarantee to a purchaser of bonds the principal and interest and to bind his firm to repurchase the bonds at the end of a specified time if the purchaser so desires, depends upon the facts in each particular case, there being no general rule.

Where the plaintiff purchased bonds relying upon such guaranty and promise made by a member of a partnership without actual authority, and having proved a written guaranty, relies upon the presumption that the partner executing the same had implied authority owing to the nature of the partnership business, and it appears that the bonds sold belonged to the partnership and matured in eight years, there is a presumption of implied authority, and the burden is upon the defendants, sued for a breach of the guaranty to repurchase, to give evidence as to whether the guaranty was within the ordinary manner of carrying on the firm's business. Hence, where the defendants offered no testimony on this question, it was proper for the court, in a trial without a jury, to render judgment for the plaintiff.

APPEAL by the defendants, John Farson and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of December, 1916, upon the decision of the court after a trial before the court without a jury.

*Charles F. Brown* [*Samuel S. Myers* with him on the brief], for the appellants.

*Arnold L. Davis*, for the respondent.

SHEARN, J.:

On February 15, 1906, at Chicago, John Farson, Sr., and the defendant John Farson, Jr,, both of Chicago, entered into copartnership articles for the purpose of carrying on " the business of banking and dealing in investment securities in the cities of Chicago and New York." The firm as originally constituted carried on this business until July 1, 1909, under the name of Farson, Son & Company, when a new firm of the same name was organized having an additional partner. This 1909 firm carried on the same business until the death of John Farson, Sr., on January 18, 1910, soon after which the executrix of John Farson, Sr., transferred to the defendant William Farson all of the then late John Farson, Sr.'s interest in the firm. On March 1, 1910, the two defendants, John Farson, Jr., and William Farson, and a certain John A. McElroy, became copartners under the name of Farson, Son & Company, and the firm continued the same business until its dissolution on October 1, 1912, by agreement, on which date the defendants John Farson (Jr.) and William Farson entered into the present partnership of the same name and continuing in the same business.

On January 1, 1907, the Eden Irrigation and Land Company mortgaged its properties to secure an issue of bonds, maturing January 1, 1916, payable at the office of Farson, Son & Company in New York. Under the deed of trust, Farson, Son & Company were appointed and became the fiscal agents of the Eden Irrigation and Land Company. Prior to the transactions in suit the firm acquired and owned certain of these bonds, which, in the ordinary course of the business of the firm in " dealing in investment securities," it undertook through its bond salesman Watling to sell to the plaintiff. John Farson, Sr., instructed Watling that he might offer, on behalf of the partnership, to guarantee the principal and interest of five of the Eden bonds if the plaintiff would purchase the same. Pursuant to this authorization, Watling made such an offer, and on April 10, 1908, wrote to Farson, Son & Company advising the firm of the transaction: " First Nat'l Bank of Ann Arbor $5000 Edens at 99 and int., you to guarantee to repurchase at end of two years if they desire and also to guarantee int. and

prin." On receipt of this letter, John Farson, Sr., affixed the signature "Farson, Son & Company" to the guaranty sued on, contained in a letter on the stationery of the firm, addressed to the plaintiff, and reading:

"Confirming the arrangement made with you by our Mr. Watling.

"For value received, we hereby guarantee payment of principal and interest promptly at maturity of the following bonds, namely:

"Nos. 268-269-270-271-272.

"Eden (Wyoming) Irrigation & Land Company.

"One Thousand ($1,000) each, dated January 1st, 1907, maturing January 1st, 1916.

"And second. For value received, we hereby agree to repurchase from you, if you so desire, at the expiration of two years, the said bonds at the price paid by you with the accrued interest."

This letter of guaranty was sent by the firm's cashier, under the direction of John Farson, Sr., to the plaintiff with the bonds, and a request was made in the letter transmitting them for a remittance. Relying upon the guaranty, plaintiff promptly paid for the bonds. At their maturity the bonds were presented for payment at the office of Farson, Son & Company in New York, but they were not paid. Thereupon plaintiff on February 18, 1916, demanded payment of the bonds from the defendants by virtue of the guaranty.

It being conceded that John Farson, Sr., had no actual authority to make the contract of guaranty and repurchase, these facts present the question whether the contract was within his implied authority. "Every general partner is agent for the partnership in the transaction of its business, and has authority to do whatever is necessary to carry on such business in the ordinary manner." (Partnership Law [Gen. Laws, chap. 51; Laws of 1897, chap. 420], § 5; now Partnership Law [Consol. Laws, chap. 39; Laws of 1909, chap. 44], § 5. See, also, *Union National Bank* v. *Underhill*, 102 N. Y. 336, 340.) Thus, while concededly the sale of the bonds was within the scope of the partnership business, it must also appear that the guaranty given to promote the sale was within

the ordinary manner of carrying on such business. No general rule for answering the question can be laid down. It must depend upon the facts developed in each particular case. Plaintiff relied upon the presumption arising from the facts above recited; defendants introduced no evidence concerning the ordinary manner of conducting such a business. The real question in this case, therefore, is whether the law casts upon the plaintiff or upon the defendants the burden of coming forward with evidence as to the guaranty being within the ordinary manner of carrying on this firm's business. Where the act in question is, as a matter of common knowledge, manifestly extraordinary and unusual in carrying on a familiar and ordinary business, it may well be that the burden of coming forward with proof should rest upon the plaintiff. Such, for example, would be the case if this guaranty were of the payment of principal and interest of a series of bonds, issued by a third party, maturing at a very remote period, say fifty years or more. But no such rule should apply in a case like this, where the bonds had only eight years to run, and especially where the firm was promoting a sale of its own property. In this connection the case of *Johnston* v. *Trask* (116 N. Y. 136) is very suggestive. There the defendants were partners, engaged in a general banking and brokerage business, and the managing partner bought for a client and sold to him certain bonds, agreeing at the time of the sale to repurchase them at any time at the price paid. In an action by the purchaser to recover the price paid the Court of Appeals said: "No evidence is found in the record which would justify the court in holding as a matter of law, that the promise upon which the action was brought was so far beyond the scope of the business of the firm, that the plaintiff had no right to rely upon it. The evidence was sufficient to cast upon the defendants the burden of rebutting the presumption arising from the evidence and the pleadings, and they having failed to do this no error was committed in refusing to nonsuit on the ground that the managing partner had no authority to bind the firm by this contract."

In the *Johnston* case it was not averred in the answer that the promise to take back the bonds was beyond the scope of

the partnership business, whereas in the case at bar the answer tenders that issue, but the burden of coming forward with proof on this issue is not determined by the form of the answer but turns upon the facts in the case. In the case at bar, as in the very similar *Johnston* case, no evidence is found in the record which would justify the court in holding as a matter of law that the promise upon which the action is brought was so far beyond the scope of the business of the firm that the plaintiff had no right to rely upon it. This accords with a familiar and wholesome rule with respect to the burden of proof where the facts support an inference in plaintiff's favor, for it would obviously be extremely difficult, if not impossible, for the plaintiff to establish that this guaranty was within the ordinary manner of the defendants' conduct of their business, whereas proof that it was wholly extraordinary and unusual to make such a guaranty in the ordinary business of dealing in investment securities would be readily available to the defendants and, so far as the transactions of this particular firm are concerned, would be entirely under its control. The defendants having elected to rest without attempting to bring forward any evidence on this head, and the facts being such as readily to raise and support a presumption that the guaranty was within the ordinary manner of promoting a transaction which was clearly within the scope of the firm's business and exclusively for the firm's benefit, the judgment was right and should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, SCOTT and DAVIS, JJ., concurred.

Judgment affirmed, with costs.