PRINCESS RING CO., INC. *vs.* CHARLES S. READ *et al.*

MAY 13, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J. This action in assumpsit is brought by Princess Ring Co., Inc. against Charles S. Read, Frank R. Gorton, Herman M. Read and Virginia M. Read, copartners doing business under the name of Byron Read Co., and/or Read Byron Co., Frank R. Gorton, doing business as Byron Read Co., and/or Read Byron Co., Charles W. Littlefield, executor and/or trustee of the estate of Byron Read, and Frank R. Gorton, copartners doing business as Byron Read Co., and/or Read Byron Co., Charles S. Read and Frank R. Gorton, copartners doing business as Byron Read Co., and/or Read Byron Co., and Everett W. Whitford, guardian of the estate of said Charles S. Read.

The case was tried before a justice of the superior court, sitting with a jury. At the conclusion of the evidence, the trial justice granted the defendant's motion for a directed verdict in favor of all the defendants, except Charles S. Read, to which ruling the plaintiff excepted. The case was then submitted to the jury on the question of the liability of Charles S. Read, personally, and the jury thereupon re-

turned a verdict for the plaintiff against him for the full amount of its claim. The case is before us on the plaintiff's bill of exceptions to certain rulings of the trial justice during the course of the trial, and to his above ruling, granting the other defendants' motion for the direction of a verdict in their favor.

The single exception necessary for our consideration here is the plaintiff's fifth exception, to the ruling of the trial justice, granting the motion for the direction of a verdict in favor of all the named defendants except Charles S. Read. All the other exceptions become immaterial in view of our final determination of the fifth exception.

The action was commenced to recover the sum of $3,100, representing the purchase price of diamonds allegedly sold and delivered on March 12, May 28, and June 11, 1931, to the defendants, as copartners, doing business as Byron Read Co. In these transactions, the evidence shows that the plaintiff's manager and treasurer, Alfred Spear, carried on all negotiations with Charles S. Read at the office of the plaintiff, or at the office of one William H. Considine, a dealer in diamonds and jewelry at 77 Washington street, Providence. The alleged purchase price in each transaction was in the form of a promissory note drawn to the order of the plaintiff; two of the notes were signed "Charles S. Read, 77 Washington St., Room 207, Prov. R. I.", and one of them signed "Charles S. Read, 77 Wash. St., Room 205, Prov. R. I."; and underneath the signature on each note appears "Read Byron Co. by Charles S. Read." Each note carries the following indorsements: "William H. Considine Co., Inc., William H. Considine, Pres., William H. Considine."

The plaintiff substantially asserts that these transactions were made with the defendant Charles S. Read, who represented that he was acting on behalf of the Byron Read Co., in which the defendants were alleged to be partners. The defendants rely chiefly upon the contentions that there

was no existing partnership at any time between the defendants, or any of them; that Frank R. Gorton was carrying on the business of Byron Read Co. in Anthony, Rhode Island, as the sole survivor of a partnership which was terminated upon the death of Byron Read in November 1927; and that, even if there were a partnership, these transactions of Charles S. Read were not within the real or apparent scope of the alleged partnership business, and therefore could not bind any of the other defendants.

We have repeatedly held that a verdict should not be directed for the defendant if, on any reasonable view of the evidence, the plaintiff can recover; and that for purposes of such a motion to direct a verdict, all the evidence must be considered most favorably to the plaintiff. *Vrooman v. Shepard Co.*, 57 R. I. 445; *Douglas v. First National Stores, Inc.*, 54 R. I. 278; *Reddington v. Getchell*, 40 R. I. 463 at 467.

The controlling questions, therefore, presented under this exception are whether there was any proper evidence to establish the existence of a partnership, as alleged, between the named defendants, or any combination of them; and whether the transactions in diamonds between the plaintiff and the defendant Charles S. Read were within the real or apparent scope of the partnership business, assuming that a partnership existed.

It is well settled that the burden of proving a partnership rests upon the party who alleges its existence. *Arava v. Bebe*, 48 R. I. 478, 139 A. 302. For this purpose, the plaintiff relied almost entirely on evidence of declarations allegedly made by Charles S. Read and by Frank R. Gorton, according to which the existence of Byron Read Co. as a partnership, and the defendants' interests therein, were asserted and described. The evidence of declarations by Charles S. Read was largely given to the court, in the absence of the jury, to permit the trial justice to determine its admissibility, and was later stricken out.

We find it unnecessary to decide whether the mere declarations of Charles S. Read or Frank R. Gorton, if made, are sufficient evidence in the circumstances of this case, to properly prove the partnership. It may be noted in passing that in *Lincoln* v. *Craig,* 16 R. I. 564, the court said: "We do not think there is any evidence that Bowen was in fact a partner. . . . There is some evidence that Craig *said he was his partner, but that is not enough,* unless Bowen knew of and consented to his saying so, or at least did not dissent, when he should have dissented, from his saying so. We find no evidence to that effect." (Italics ours.)

However, assuming for the purposes of the motion to direct, that there was some evidence tending to prove a partnership, that was not enough to require that the case be submitted to the jury as to the liability of all the defendants. It was still incumbent upon the plaintiff to prove, in the absence of any personal knowledge, acquiescence, or holding out on the part of the other defendants, that the alleged transactions of Charles S. Read with the plaintiff were within the real or apparent scope of the business of Byron Read Co. *Union National Bank* v. *Underhill,* 102 N. Y. 336; *Samstag & Hilder Bros.* v. *Ottenheimer,* 90 Conn. 475; *Caswell* v. *Maplewood Garage,* 84 N. H. 241.

In the *Caswell* case, *supra,* there was evidence that a member of the partnership had admitted liability, but there was no other evidence that the liability attached to the partnership. The trial court refused to direct a verdict for the defendant, whose exception to that ruling was later sustained on appeal, the court saying, among other things: "It is the accepted law everywhere that one partner is not the agent of the firm to admit the existence of the partnership. . . . By a parity of reasoning the conclusion is reached that he is not such agent to admit that a transaction was a part of the firm's business. The rule was stated by Judge Cooley as follows: 'A partner's declarations may bind his associates in partnership matters, but not in concerns for-

eign to the partnership; and he cannot by his mere admission or declaration bring a transaction within the scope of the business when upon the facts in proof it appears to have no connection.' . . . Many other authorities sustain this proposition."

The same principle and reasoning were recognized and followed in *Sanderson Fertilizer & Chemical Co.* v. *Tatlas,* 103 A. 780 (R. I.), only in that case the defendant was seeking to set up, as a defense, an alleged partnership with another. The court held that the bare statements of one defendant to prove the existence of the partnership, without otherwise stating the essential facts concerning the alleged agreement or course of business in the management of the farm, warranted a direction of verdict for the plaintiff.

In *Sweet* v. *Wood,* 18 R. I. 386, the court evidently applied the same principle in reaching its conclusion on the facts there appearing in evidence. In that case the testimony of the existence of a partnership between the defendants was not disputed and the facts in evidence showed that the use of horses was necessary in carrying on the partnership business in the ordinary way. Therefore it held that the hiring, by one member, of the horse on the occasion in question was clearly within the scope of the ordinary partnership business and further "that the acts, admissions and declarations of a partner, during the existence of the partnership, while engaged in the transaction of its business, *or relating to matters within its scope,* are evidence against the firm. 17 Amer. & Eng. Encyc. Law, 1077, and cases cited in note 2."

In the instant case, however, there is no evidence upon which the jury could reasonably find that the three transactions in diamonds, between the plaintiff and Charles S. Read, were within the real or apparent scope of the business of Byron Read Co. It is significant that the brief for the plaintiff does not mention or attempt to support the

opposite contention, but confines its argument wholly to showing evidence of the existence of the partnership. Notwithstanding this omission, we have carefully reviewed the transcript and we have been unable to find any evidence of facts which reasonably could justify the conclusion that such transactions were within the scope of the alleged partnership business. Such evidence would be necessary in the circumstances of this case to justify the trial justice in submitting to the jury the issue of the liability of all the defendants.

From the undisputed facts in evidence, it is clear that three fourths of the Byron Read Co.'s business was that of "undertaking" and approximately one fourth thereof was dealing in "household furniture"; that it carried on its business in the village of Anthony, Rhode Island, not in Providence, for more than forty years, during which time it never bought, sold, displayed, or dealt in diamonds, or jewelry of any kind, or watches or other kindred articles; and never hired or held out anybody to deal in them; that the plaintiff's manager never knew or saw or did business with any of the defendants, except Charles S. Read; and never visited the business store at Anthony, or knew what it actually displayed or sold; and never delivered any of the diamonds in question, or any other diamonds, to the Byron Read Co.'s place of business; that all of the diamonds were delivered in the office of the plaintiff to the defendant Charles S. Read; or to both Charles S. Read and William H. Considine; that none of the other defendants ever knew of the alleged transactions or of the signing of the notes, and the plaintiff never gave notice thereof personally to any of the defendants, except Charles S. Read; that the defendants Herman M. Read and Virginia M. Read were minors at the time and not actually connected with the conduct of the business; and that Charles S. Read was never employed or engaged actively in the management or conduct of Byron Read Co. before or after his

father's death; that the notes given by Charles S. Read to the plaintiff were substantially signed "Charles S. Read, 77 Washington St., Prov. R. I.", which the plaintiff knew to be the business address of said William H. Considine, whom the plaintiff also knew and admitted was in no way connected with the Byron Read Co. There was no testimony that any company ever existed by the name of "Read Byron Co.", which appears on each note, or that the defendant executor, trustee or guardian, as such, were ever actually connected with the conduct of the business.

The will of Byron Read, bequeathing his interest in the business formerly conducted by him and Frank R. Gorton as a partnership, does not, by itself, establish the legatees as partners with the original surviving partner, Frank R. Gorton; the testimony of the plaintiff's manager concerning alleged declarations by Charles S. Read that "his concern has . . . been selling a great deal of diamond goods, in as much as they handle everything from a needle to undertaker's supplies," was given to the court in the absence of the jury, and was stricken from the record by the court and also was withdrawn by the plaintiff's counsel. It was not later testified to as such.

The other alleged declarations about previous dealings in diamonds by the Byron Read Co. was made to the plaintiff, not by any of the defendants, but by William H. Considine himself, whom the plaintiff knew and admitted to be in no way connected with the Byron Read Co. Consequently it could not bind the defendants, other than perhaps Charles S. Read. The witness Halladay, who testified that he visited Byron Read Co.'s store at Anthony, to obtain information for a credit rating, gave no testimony of any custom, or usage or facts upon which the nature and apparent scope of the business could be fairly inferred as including the dealing in diamonds. Nor did he make any report at the time to his own office or to the plaintiff, from which such an inference could fairly and reasonably be

drawn, in view of all the circumstances in evidence, which were undisputed.

We are of the opinion that, viewing most favorably to the plaintiff, all of the evidence and the fair and legitimate inferences therefrom, there was no evidence upon which the jury could reasonably find any liability against any of the defendants, except Charles S. Read.

For the reasons stated, the trial court was not in error in granting the motion of the defendants to direct a verdict in favor of all the defendants except Charles S. Read, and the plaintiff's fifth exception is therefore overruled.

All of the plaintiff's exceptions are overruled and the case is remitted to the superior court for entry of judgment on the verdict.

*Ira Marcus, John C. Knowles of Providence,* for plaintiff.

*Grim & Littlefield, Benjamin W. Grim, Matthew W. Goring,* for defendants.

